THE BOARD OF SUPERVISORS OF SARATOGA COUNTY, Appellant, *v.* ELLA DEYOE, Impleaded, etc., Respondent.

Plaintiff's complaint alleged, in substance, that the county treasurer of S. county, pretending to act under an authority to issue notes for money advanced to the county to the amount of $20,800.44, issued seventy-three notes to the amount of $138,631, which are held by fifty-three persons, the defendants herein; that said notes are not valid or legal debts against the county except to the extent of $20,800.44, which the county is willing to pay; that thirty-one of the defendants had brought separate suits on their notes, and the other defendants intend so to do; that plaintiff is unable to ascertain who are the rightful owners of the debt owing by the county, or how much thereof is due to either of the defendants, and that a separate litigation with each defendant would subject plaintiff to great expense. Upon demurrer to the complaint, *held*, that upon the facts stated a case was made, entitling the plaintiff, upon equitable principles, to implead the holders of the notes for the purpose of having their respective rights and the liability of the county determined in one action; that the claims were of the same general character, and the action was maintainable for the purpose of preventing a multiplicity of suits and to protect plaintiff against the hazard of a double recovery. Also *held*, that the question as to whether, notwithstanding the limitation of authority, persons dealing with the treasurer and advancing money in good faith upon his assurance that the transaction was a part of the authorized dealing, was not presented by the demurrer. *Board of Supervisors* v. *Deyoe* (15 Hun, 526), reversed.

(Argued March 17, 1879; decided May 20, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, in favor of defendant Deyoe, entered upon an order affirming an order sustaining a demurrer upon the part of said defendant to the complaint herein. (Reported below, 15 Hun, 526.)

The substance of the complaint is set forth sufficiently in the opinion.

*Edward Fitch Bullard*, for appellant. This action can be maintained as a bill in the nature of a bill of interpleader. (*Yates* v. *Tisdale* [3 Edw., 71], 74; *Schuyler* v. *Pelisser*,

3 Ed. Ch., 191, 192; *Shaw* v. *Coster*, 8 Paige, 339, 345; 2 Story's Eq., § 812 ; Story's Eq. Pl., §§ 294–297; *Cady* v. *Potter*, 55 Barb., 466.) This action can be sustained as a bill *quia timet.* (*N. Y. and N. H. R. R. Co.* v. *Schuyler*, 17 N. Y., 600; 34 id., 31; *De Costa* v. *Seaudret*, 2 P. Williams, 170; *Peake* v. *Highfield*, 1 Russ., 559; *Hamilton* v. *Cummings*, 1 Johns. Ch., 517; *McHenry* v. *Hazard*, 45 N. Y., 580; *Bailey* v. *Briggs*, 56 id., 416; *Barry* v. *Mutual Life Ins. Co.*, 53 id., 536; *Marsh* v. *City of Brooklyn*, 59 id., 280; *Sickels* v. *Richardson*, 6 Weekly Dig., 273; *Guest* v. *City of Brooklyn*, 59 N. Y., 514; *Townsend* v. *City of Brooklyn*, 7 Weekly Dig., 9.) This action is proper as a bill of peace to prevent a multiplicity of suits. (1 Story's Eq. Jur., § 25, 32; 1 R. S., 384, § 1; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 17 N. Y., 592; Willard's Eq. Jur., 323 [Potter's ed.] ; *Cooper* v. *Clerk*, 3 P. Williams, 151; *Alexander* v. *Pendleton*, 8 Cranch, 486; *Mayor of York* v. *Pilkingston*, 1 Atk., 282; *Lord Tenham* v. *Herbert*, 2 id., 483; *Hanson* v. *Gardner*, 7 Ves. Ch., 310; 2 Story's Eq., § 854; *Ware* v. *Horwood*, 14 Ves., 33; *Hodges* v. *Figgs*, 21 Vt., 280; *Third Ave. R. R. Co.*, v. *The Mayor*, 54 N. Y., 159; *West* v. *Mayor*, 10 Paige, 540; *Corning* v. *Troy Iron and Nail Factory*, 40 N. Y., 191.) This action should be sustained upon broad principles of equity even if no precedent could be found. (Burrill Law Dict., tit. Eq.; 3 Blackstone Com., 429; 1 Story's Eq. Jur., §§ 7, 8, 10.)

*Olin A. Martin*, for respondent. This action cannot be sustained as one in the nature of a bill of interpleader. (Story's Eq. Jur., §§ 806, 807; Milford's Pl. in Ch., 141; id., 34; *Aldridge* v. *Thompson*, 3 Bk. Ch., 150; *Shaw* v. *Coster*, 8 Paige, 339, 345; Cooper's Eq. Pl., 450; Harrison's Ch. Pr., 96; Mad. Ch., 172, 173; *Crawshay* v. *Thornton*, 2 Myl. Cr., 1; *City Bank* v. *Bangs*, 2 Paige, 570; 1 Smith's Ch. Pr., 469, and note.) The complaint does not allege such a state of facts as would warrant a court of equity in decreeing the cancellation of any of the notes.

(Story's Eq. Jur., §§ 452, 693, 694, 701; 1 Ves. Jr., 78; 18 Alb. L. J., 12; *Tn. of Venice* v. *Woodruff*, 62 N. Y., 462, 467.) The fact that the holders of the alleged invalid notes are numerous is not sufficient ground for entertaining the suit. (*Tn. of Venice* v. *Woodruff*, 62 N. Y., 462, 471; *L. and B. S. R. R. Co.* v. *Goodman*, 25 Barb., 469; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 17 N. Y., 592, 608; *West* v. *Mayor, etc.*, 10 Paige, 540; *Wallack* v. *Society, etc.*, 67 N. Y., 23, 28; Story's Eq. Jur., §§ 853, 854; Mitford's Pl., 145; W.'s Eden on Inj., 417; *Travis* v. *Myers*, 67 N. Y., 542.)

ANDREWS, J. This is an appeal from the judgment of the General Term, affirming the judgment of the Special Term, sustaining the demurrer of the defendant Ella Deyoe, to the plaintiff's complaint. The complaint shows that each one, of the fifty three defendants, is the holder of one or more notes, purporting to be the notes of the county of Saratoga, isssued by Henry A. Mann, county treasurer, in 1875, and signed by him in his official character, and which amount in the aggregate to $138,631. The notes on their face refer to a resolution of the board of supervisors, passed in November, 1874, as the authority under which they were issued. The board of supervisors in that month by resolution directed the county treasurer to procure an extension of a county debt of $12,800.44, maturing on or before February 12, 1875, and by another resolution authorized the treasurer to borrow on the credit of the county the sum of $8,000, payable in one year, with interest. The resolution last referred to, was the only authority given by the supervisors to the treasurer, to borrow money on the credit of the county. The treasurer pretending to act under the authority of this resolution, on the 15th day of February, 1875, issued notes dated on that day, to an amount exceeding $50,000, and from time to time during that year issued other notes, making seventy three in all, of the aggregate amount before stated. From the avails of these notes

the treasurer paid the debt of $12,800.44. The complaint charges, and the defendant by her demurrer admits, that the notes are not valid or legal debts against the county, except to the extent of $20,800.44, and to this extent the complaint concedes that the county is liable thereon. Prior to the commencement of this action, thirty one of the defendants had brought separate suits against the county, to recover on the notes held by them respectively, and the complaint charges that the other defendants in like manner intend to commence suits on their claims. In addition to the facts above stated, the complaint alleges that the plaintiff is uncertain, and with due diligence has been unable to ascertain who are the rightful owners of the debt, owing by the county, or how much of the same is due to either of the defendants, and that it cannot with safety determine the question; that the county is ready and willing to pay the $20,800.44, as soon as it can be ascertained who are rightfully entitled thereto, and that a litigation with each defendant in a separate suit, upon his claim, will subject the plaintiff to great and unnecessary expense and trouble, and will be oppressive and vexatious. The relief demanded is that the defendants and each of them may be enjoined and restrained from further prosecuting the actions commenced against the plaintiff, or from commencing other actions upon the claims mentioned, and that it may be adjudged, which of the notes held by the defendants are valid debts against the county, and which are invalid, and that the invalid notes be surrendered and canceled. The plaintiff also asks that the defendants may interplead and for general relief.

The question presented is whether upon the facts stated in the complaint, a case is made, which upon principles of equity entitle the plaintiff to implead the fifty three holders of the notes for the purpose of having their respective rights, and the liability of the county determined and settled in a single action. It is plain that the authority of the treasurer to issue the obligations of the county, was limited to issuing notes to the amount specified in the resolution of the super-

visors. The issue of notes beyond that amount was a breach of duty, and a transgression of the limits of the authority conferred. The question whether, notwithstanding the limitation of the authority, persons dealing with the treasurer, and advancing money in good faith upon his assurance that the particular transaction was a part of the authorized dealing, does not we think arise upon the case as now presented. The demurrer admits that the actual authority was that conferred by the resolution of the supervisors, and that the county is not liable beyond the sum alleged in the complaint. The defendants may by answer set up the facts upon which they rely to establish the liability of the county for their respective demands, although the power of the treasurer under the resolution had been in fact exhausted, when the particular dealing took place. We shall assume in disposing of the case that the county is only liable to the extent of $8,000, and the additional sum received on the notes which was applied to the use of the county, and leave the determination of the question whether it is liable beyond these amounts, to be determined when the facts shall be fully presented.

The case then is briefly this. The county owes a debt of $20,800.44, which it is ready and willing to pay. This debt is represented by notes of the county treasurer, which are admitted to be valid. The treasurer under an authority to issue notes for money advanced to the county, to the amount of this debt has fradulently issued notes amounting in the aggregate to many times this debt. These notes seventy-three in number, and of various amounts, are held by fifty-three different individuals, who are the defendants in this action. The county is not liable upon the notes beyond the sum above stated. The valid and the invalid notes are of the same form, and all refer on their face to the same resolution of the supervisors, as the authority under which they were issued. The subject has become so complicated and entangled by the acts of the treasurer, that the county cannot distinguish the valid from the invalid notes. Thirty-one of the fifty-three defendants have commenced separate suits

upon the notes held by them, and the other defendants are about to commence similar actions.

It is to be observed that the claims of the several defendants, are of the same general nature ; that is to say; they all arise upon notes issued by the county treasurer, and which purport to have been issued under the same specific authority. Each defendant claims by virtue of a contract with the county, through the treasurer. Each defendant also claims that the notes held by him are valid obligations of the county. But upon the averment in the complaint admitted by the demurrer that the whole liability of the county does not exceed $20,800.44, this claim in substance is equivalent to a claim by each defendant that the note held by him represents a part of that sum. It is very obvious that upon the facts stated in the complaint the prosecution of separate actions by each defendant will involve the county in great perplexity, and embarrassment. It cannot voluntarily pay the claims of any of the defendants, because it cannot distinguish between them. It will be compelled to litigate the several actions, and in such separate litigations, it will encounter the further difficulty that a judgment in one action will not determine the rights of the claimant in any other. If judgments against the county to the extent of the conceded debt, shall be obtained, it will not prevent a recovery by the other claimants on a subsequent trial, and before another jury, when the facts may be changed, or more fully disclosed, or different inferences be deduced from them. In the separate litigations, all the claimants will be indifferent as to the result of the litigation in any of the cases except their own. So that, it is not an unfounded apprehension that if the suits are separately prosecuted, the county may be compelled to pay the whole sum represented by the notes, although as matter of law, its liability to the several claimants in the aggregate, does not exceed the sum of $20,800.44.

It does not require any argument to show that convenience, and the ends of justice will be subserved by an investigation and determination of the whole controversy in

a single action, wherein the extent of the county's liability, and the persons in favor of whom such liability exists may be settled and adjudged. In such an action it will be to the interest of each claimant to present the facts in support of his own claim, and to resist the claims of others. The material facts will in this way be brought to light and a decision reached upon a view of all the material circumstances. I am of opinion that facts stated in the complaint disclose a case for equitable interference to restrain the prosecution of separate actions, and to have the rights of the parties determined in a single suit. It may be true as claimed that there is no exact precedent to be found in the books, but the case is itself anomalous. An elective officer, charged with public duties has violated his trust, and has issued obligations purporting to be the obligations of the county, which for the most part (as we now assume) are invalid, and do not bind the county. The taxpayers are the persons ultimately bound to respond, and to pay the obligations to the extent they are found to be valid. The county is ready and willing to pay what it owes as soon as its creditors can be ascertained. It cannot safely pay without litigation. It stands in the position of holding a fund, equal to its admitted debt, which is claimed by many persons, and it asks by this action that the court will interfere to prevent multiplicity of suits, and to determine the right of all the claimants in a single action, the general question in which will be the same as to each defendant, viz. : whether the particular claim represents any part of the admitted debt. The prevention of a multiplicity of suits as said by *Chancellor Kent*, in *Brinkerhof* v. *Brown*, (6 J. Chy., 151), is a very favorite object with a court of equity, and the number of parties and the multiplicity of actual or threatened suits will as stated by COMSTOCK, J., in the case of the *N. Y. and N. H. R. R. Co.* v. *Schuyler*, (17 N. Y., 608) sometimes justify a resort to a court of equity, when the subject is not at all of an equitable character and there is no other element of equity jurisdiction. It is upon this ground that bills of peace are entertained, viz. : to quiet unnecessary

litigation. (Story's Eq. Jur., § 854 ; Milford's Eq. Pl., 145.) The maintenance of this action will subserve this purpose. It will also protect the plaintiff against the hazard of a double recovery, which is the ground upon which bills of interpleader are sustained. (*Badeau* v. *Rogers*, 2 Paige, 209 ; *Bedell* v. *Hoffman*, id., 199, 2 Daniels' Chy., 1562.) The case presents the elements which justify the interposition of a court of equity. It may not be a case of interpleader strictly, or which meets all the definitions of a bill of peace, nor a case which could be maintained solely as one for the cancellation of written instruments, but it combines to a greater or less extent, elements of jurisdiction in each of these cases, and the action we think may be sustained without a violation of principle, and without interfering with the substantial rights of the defendants.

The judgment of the General Term should be reversed, and the demurrer overruled, with liberty to the defendant to answer, on payment of costs.

All concur, except DANFORTH, J., dissenting, and MILLER, J., not voting.

Judgment reversed.