## THE ALERT.[1]

*(District Court, S. D. New York. November, 1889.)*

1. SHIPPING—DAMAGE TO CARGO—LIBEL IN REM—THIRD PARTIES—CHARTERERS—FIFTY-
   NINTH RULE.
     In an action *in rem* against a chartered ship for negligent damage to cargo, the
   charterers may, on the claimants' petition showing cause therefor, be made parties
   defendant, on the analogy of the case of *The Hudson,* 15 Fed. Rep. 162, and of rule
   59 in admiralty.
2. SAME—PRACTICE—NEW REMEDIES.
     It is the duty of courts of admiralty, under their inherent and statutory powers,
   to adapt their practice and proceedings to new emergencies, so as to secure, as far
   as possible, the speedy, complete, and convenient administration of justice.

In Admiralty.    On motion that charterers be made co-defendants with
the ship.
   *North, Ward & Wagstaff,* for libelant.
   *Goodrich, Deady & Goodrich,* for claimants.
   *R. D. Benedict,* for charterers.

BROWN, J.    The Alert was a chartered ship, and, being sued *in rem* for
negligent damage to cargo, by the breaking of her tackle while discharg-
ing, under the charterers, her owners in their answer say that the tackle
was furnished either by the shipper or by the charterers, under a special
agreement between them, and not by the ship, and they now move that
the charterers be made co-defendants.    Unless this is done, there may
be three independent suits on the same question.    Most of the consider-
ations mentioned in the case of *The Hudson,* 15 Fed. Rep. 162, are ap-
plicable; and I think the motion should be granted upon the analogy of
that case, and of the fifty-ninth rule in admiralty.    In several instances,
where the language of that rule was not literally applicable, it has been ap-
plied by analogy, where the same or similar reasons have existed for its ap-
plication, and where no substantial harm could arise therefrom to the plain-
tiff.    The defendants must, of course, give the necessary additional stip-
ulations for costs, both to the libelants and to the new parties brought in.

### ON REARGUMENT ON EXCEPTIONS.

*(January 15, 1890.)*

The charterers, having been served with process, have appeared spe-
cially, and upon exceptions moved to set aside the process issued
against them as unauthorized.    Subsequent reflection confirms my judg-
ment of the propriety of the order heretofore granted.    Its propriety does
not depend upon the form of the action, whether it be in contract or in
tort, but on the essential reasons for it, viz., the due administration of
justice; to prevent circuity of action and a multiplicity of suits upon the
same question; to secure a thorough hearing upon full evidence as to the
facts; to prevent diverse or contradictory decisions upon the same subject,

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

involving, necessarily, injustice to some of the parties. The difficulties in the way of such a procedure as the present, in cases arising on contract, where the third parties brought in may be liable to indemnify the others, are less than in cases of tort, where, for the most part, there is no right to compel contribution. The case of *The Hudson, supra,* was based upon the existence of such a right upon the facts as stated in the petition. The papers on which the present order against the charterers was issued show that the contract sued on was the charterers' contract. The libel is for damages upon the breach of this contract, through a negligent delivery of cargo. The charterers were in possession of the ship; they were the owners *pro hac vice;* they were the principals in the contract. The bill of lading was their obligation, not that of the master, who protested against such cargo, and no fault appears in the ship or master. The owners of the ship, who have been obliged to interpose as claimants to prevent the sacrifice of their property, and the master, are under no personal responsibility. They are strangers to the contract sued on, and without any certain means of ascertaining the facts, or producing the evidence of them. Upon the case, as thus far presented, if the ship is liable, the charterers are also liable, and bound to indemnify the claimants. Yet the claimants, if defeated in this suit, when they sue the charterers for indemnity may be again defeated through the difference in the proofs; and the libelants, if defeated here, may again sue the charterers. If the charterers admitted their obligation to indemnify the claimants for the results of the present action, or if there were any express contract imposing this obligation on them, the need of such an order as the present would be less, since notice to the charterers of the pendency of this action, and an opportunity to defend it, would bind them by the result, (*Chicago City* v. *Robbins,* 2 Black, 418; *Clark* v. *Carrington,* 7 Cranch, 308; *Village of Port Jervis* v. *Bank,* 96 N. Y. 550, 557; *Heiser* v. *Hatch,* 86 N. Y. 614; *Dubois* v. *Hermance,* 56 N. Y. 673; *Konitzky* v. *Meyer,* 49 N. Y. 571;) though this would not prevent the injustice to the ship-owners of being compelled to pay the damages on the charterers' contract before the latter were called on for payment.

The charterers, however, do not admit their liability to indemnify the ship-owners. There is no express contract covering the point. The obligation of the charterers to indemnify is directly involved in the question to be tried in this suit, viz., whether the charterers agreed to supply the tackle, and depends on the same evidence. The charterers, if not made parties now, might litigate the same question anew in any subsequent suit. *Chicago City* v. *Robbins,* 2 Black, 418, 423. Under the former practice in equity, the charterers would be brought in as defendants as a matter of course. Under the present practice in England, since 1873, the introduction of third persons in such cases is in the ordinary course of procedure, even in common-law suits. *Benecke* v. *Frost,* L. R. 1 Q. B. Div. 419; *Fowler* v. *Knoop,* 36 Law T. R. (N. S.) 219; *Coles* v. *Association,* L. R. 26 Ch. Div. 529; *Carshore* v. *Railroad Co.,* L. R. 29 Ch. Div. 344; *The Cartsburn,* L. R. 5 Prob. Div. 35, 39.

The present case could not arise in England, since no suit *in rem* lies

there for breach of a contract of affreightment. The remedy would be only against the charterers personally. In France there is no privilege on a chartered ship for breach of a contract not made either with the master or the owners, but made with known charterers in possession of the ship. 1 Valroger, Droit Mar. 281; Court of Cassation, Dall., 1845, Part I., 279. And, aside from that, where a maritime claim is sought to be enforced through a suit against the master, (as the practice in Europe generally is, not, as with us, by a suit *in rem* directly against the ship alone,) if the principals are not made co-defendants in the first instance, they may be brought in, if within jurisdiction, upon the master's suggestion. 1 Rev. Int. du Droit Mar. 118, 556; *The Gyptis,* 2 Id. 182, 664; *Blondiaux* v. *Pavot,* 4 Id. 22. And, more broadly still, in the enforcement of civil rights, generally, in the majority of European countries, the practice by what is termed, "*L'assignation en declaration de jugement commun,*" or, more briefly, "*Intervention passive ou forcee*" or "*La mise en cause,*" permits the defendant, in the absence even of any express provisions of the Codes, to bring into the cause any third person who might afterwards litigate the same question with the defendant, and who ought to be bound by the judgment, but who, if not in the case, might dispute its validity as to him. 3 Carre et Chauv. Proc. Civ. Qu. 1271, and note; 1 Berriat St. Prix Cours de Proc. Civ. p. 293. Dalloz says this right is incontestable, and founded on necessity and the nature of things. Repertoire, Vo. "Intervention," § 3, No. 142; Bonnier, Elem. Proc. No. 723; Italian Civil Code, §§ 203–205; Sebire et Carteret, Biblioteca del Diritto, tit. "Intervento," art. 2, § 38. See 17 Revue Critique de Leg. (N. S.) 462.

In the present case the charterers, as I have said, are the principals. If there is any liability, they are liable, and liable to indemnify the ship; and whether there is any liability cannot be determined as to them without their presence. If the maritime law and the practice of this country allow a suit *in rem* on the contract of known charterers solely, there is no lack of power in the court to regulate its procedure so as to promote speedy and substantial justice. Both the statutes and the admiralty court rules, in cases not provided for, authorize the court "to regulate its practice as is fit and necessary for the advancement of justice." Rev. St. §§ 913, 918, rule 46; *The Hudson,* 15 Fed. Rep. 175. This authority is a power held in trust for the benefit of litigants, and it is the duty of the court to exercise it in proper cases, by adapting its procedure to the practical needs of justice. On this point, BENEDICT, J., in the case of *The Epsilon,* 6 Ben. 378, 389, says:

"The admiralty creates its own forms of proceeding, and adapts methods of its own to the varied necessities which present themselves to its consideration. The power to do this is part, and the important part, of the jurisdiction of the admiralty. 'The principles, rules, and usages which belong to courts of admiralty' (Process Act 1792) enable these courts to work justice between man and man with celerity and economy. They accomplish this by ways unknown to other courts, and for many of which it were vain to look in any statute. Stripped of the power to pursue these methods, there would be little left to distinguish a court of admiralty from a court of equity or of law.

\*        \* When cases arise which have not been provided for in the rules prescribed by the supreme court, the district courts, as the only courts of original jurisdiction in admiralty, have the power, and are bound, to devise modes of proceeding which shall enable them to carry into effectual execution any law which they are called to administer."

The case of *The Hudson, supra*, and the fifty-ninth rule in admiralty, though not literally applicable, furnish also an analogy for this order. A similar practice has been occasionally followed, where necessary, in cases not literally within the rule. *The City of Lincoln*, 25 Fed. Rep. 835; *The John Cottrell*, 34 Fed. Rep. 907; *The Doris Eckhoff*, 32 Fed. Rep. 555; *Joice* v. *Canal-Boats*, Id. 553. This case is one in which the libelants may proceed *in rem* and *in personam* in the same action, under the long-standing practice of this circuit. *The Monte A.*, 12 Fed. Rep. 336, 337, and cases there cited; *Joice* v. *Canal-Boats*, 32 Fed. Rep. 554. He might, therefore, originally have made both the ship and the charterers defendants. He should not be suffered to proceed capriciouly against one only, to the certain prejudice of the other. This can be remedied by the joinder of the charterers as defendants now; and this will create no material embarrassment or inconvenience to the libelant. It is the charterers who have brought the ship into this situation. It is their contract that is sued on. It is they who have the means of defense, if there is any defense; and it is they who ought to pay, if there is anything to be paid. I have no doubt of the authority of the court to bring in the charterers as defendants. To refuse to do so, under such circumstances, would, it seems to me, be a denial of justice. The motion to set aside the additional process is therefore denied. The process should require the defendant to answer the libel and petition, and the petition should set forth all that is needed in connection with the libel to constitute a cause of action against the charterers.