LOUISVILLE, N. A. & C. RY. CO. v. OHIO VAL. IMPROVEMENT & CONTRACT CO. et al.

(Circuit Court, D. Kentucky. May· 23, 1893.)

1. NEGOTIABLE INSTRUMENTS — ILLEGAL GUARANTY — BILL TO CANCEL—BONA FIDE PURCHASERS.
    A bill brought by a railroad company to cancel its guaranty upon the bonds of another company, on the ground of illegality and fraud, is not demurrable because it fails to show that defendants are not bona fide holders for value, for, when fraud or illegality in the inception of negotiable instruments is shown, it devolves upon the indorsee to show that he is a bona fide holder.

2. EQUITY JURISDICTION — MULTIPLICITY OF SUITS—NEGOTIABLE INSTRUMENTS.
    A railroad company, whose guaranty appears indorsed upon several hundred bonds issued by another company, having .been placed there illegally and fraudulently, may maintain a bill in equity against the holders thereof to cancel the guaranty, on the ground of preventing a multiplicity of suits, although it might have a good defense at law to each of the bonds.

In Equity. · Suit by the Louisville, New Albany & Chicago Railway Company against the Ohio Valley Improvement & Contract Company and others to obtain the cancellation of complainant's guaranty upon certain bonds issued by the Richmond, Nicholasville, Ervine & Beattyville Railway Company. Heard on demurrers to the supplemental bill. Demurrers overruled.

Henry Crawford and Helm & Bruce, for complainant.

St. John Boyle and Muir, Heyman & Muir, for defendants.

LURTON, Circuit Judge. The questions now for consideration arise upon the demurrers filed by certain defendants to the supplemental bill filed by the original complainant. For a proper understanding of these questions, it is necessary to state the substance of the original bill, as well as of the supplemental bill. The original bill alleged that the defendant the Richmond, Nicholasville, Ervine & Beattyville Railway Company, hereafter styled the Beattyville Railway Company, had contracted with the Ohio Valley. Improvement & Contract Company for the construction and equipment of its line of railway, situated in the state of Kentucky; that' the construction company, as a consideration, was to receive the first mortgage bonds of the railway company, to the extent of

$25.000 per mile, deliverable as the work progressed, and also a controlling interest in its shares of stock. The bill then charged that the complainant railway company had entered into a contract with the defendant construction company, by which, in consideration of a transfer to it of a majority of the entire stock of the Kentucky Railway Company, that it (the complainant railway company) would guaranty the payment of the principal and interest of the railway bonds to be received by the construction company. The bill further alleged that this contract had been so far executed that the guaranty of the railway company had been indorsed upon 1,185 of the Beattyville Railway Company's bonds, which had been delivered to the construction company. This indorsement upon these bonds was in these words:

"For value received, the Louisville, New Albany and Chicago Railway Company hereby guaranties to the holder of the within bond the payment by the obligor therein, of the principal and interest thereof, in accordance with the tenor thereof."

It also charged that the bonds thus guarantied had been delivered to the construction company, and that a large portion of them were still held by the construction company; that others had been delivered to certain persons who had subscribed therefor, and who were named as defendants to the bill; that others, still, were in the hands of the Louisville Trust Company, to be delivered to subscribers when paid for. The bill alleged such a state of facts as to make the guaranty upon such bonds illegal and fraudulent, and the contract for the guaranty of further bonds to be received by the construction company likewise illegal.

Upon the filing of the bill the usual injunction was granted, enjoining all of the named defendants from transferring, incumbering, selling, or removing from within the jurisdiction of the court, any of the bonds thus illegally and fraudulently guarantied; and such steps were thereafter had, under the original bill and answer, as resulted in a decree canceling the guaranty upon all bonds then in the possession or control of the construction company. Since that decree, complainant company has filed a supplemental bill, alleging, among other things, that the work of construction of the Beattyville Railway has been abandoned; that it is insolvent, and in the hands of a receiver appointed by this court, under a bill filed by the holders of its mortgage bonds; and that complainant has lately learned that certain persons, who are made defendants to this supplemental bill, claim to be the owners and holders of Beattyville Railway bonds, many of them guarantied by complainant company, and which have not been heretofore canceled. The supplemental bill prays that these holders of said guarantied bonds be made defendants, and that they be required to bring their bonds into court, and submit to a cancellation of the guaranty thereon.

Certain of these defendants have appeared and demurred upon the ground that this court has no jurisdiction of the matters complained of; no case appearing on the face of the bill, entitling the complainant, in a court of equity, to any relief against them.

Neither the bill nor the supplemental bill contain any specific allegation as to the circumstances under which the demurring defendants became holders of bonds. It does not affirmatively appear whether they are, or are not, holders for value and without notice. But it seems to me that where a bill alleges a state of facts showing that negotiable securities have been issued illegally and fraudulently, and have come into the possession of the defendant, that it devolves upon the defendant, in view of such fraud and illegality, to show that he is a purchaser for value. "Where fraud or illegality in the inception of negotiable paper is shown, the indorsee, before he can recover, must prove that he is a holder for value. The mere possession of the paper, under such circumstances, is not enough." Story, Prom. Notes, § 196; Smith v. Sac Co., 11 Wall. 139. "It is an elementary rule that, if fraud or illegality in the inception of a negotiable paper is shown, the indorsee, before he can recover, must prove that he is a holder for value. The mere possession of the paper, under such circumstances, is not enough." Stewart v. Lansing, 104 U. S. 505. For the purpose of this demurrer, the defendants must be treated as standing, with respect to these guarantied bonds, in no better situation than the construction company.

Defendants next insist that a court of equity could not entertain jurisdiction of a suit to set aside any illegal contract, where there is an adequate and sufficient defense at law. Cancellation is one of those purely equitable remedies exercised exclusively by courts of equity. The jurisdiction has always existed, but will not generally be exercised if the legal remedy, whether defensive or affirmative, is certain, complete, and adequate. There is a strong line of authority, from courts of the highest respectability, supporting the view that equity has jurisdiction to decree cancellation of a deed, bond, note, or other obligation, whether the instrument is or is not void at law, or whether it be void for matter appearing on its face, or aliunde. Hamilton v. Cummings, 1 Johns. Ch. 521, and cases cited, English and American; Jones v. Perry, 10 Yerg. 59; Johnson v. Cooper, 2 Yerg. 525. But in the United States courts the jurisdiction has been much more sparingly exercised, and some circumstances must appear, calling strongly for equitable interposition. Thus, in the case of Grand Chute v. Winegar, it was held that a bill would not lie to cancel bonds held by the defendant, where it appeared on the face of the bill that the defense at law was perfect. 15 Wall. 373. Under the strictest limitations as to the circumstances justifying the exercise of equitable jurisdiction for purpose of cancellation, it would seem that if, for any reason, it appears that a legal remedy would be inadequate to the attainment of complete justice, as where the instrument sought to be canceled is negotiable, and has not matured, the remedy at law, in such cases, must be deemed inadequate, inasmuch as the complainant would be subjected to the hazard of being cut off from defenses if the instrument should come to the hands of an innocent holder for value. So, where any vexatious or injurious use of an instrument could be made, if suffered to remain in the hands of one

not entitled to enforce payment, equity will interpose, and cancel the instrument. Pom. Eq. Jur. §§ 221, 911.

I do not, at this stage of this case, deem it necessary or proper to determine whether or not these bonds, in the hands of innocent purchasers for value, would be enforceable against the complainant company. The question should be reserved for further argument, and careful consideration. But if the defense of the complainant company would be cut off, in case these bonds should pass into the hands of bona fide holders, it is clear that equity should interpose, and enjoin such transfer, and cancel the guaranties indorsed upon them.

Upon another ground, altogether, I am of opinion that equity has jurisdiction to maintain this bill, and that is to prevent a multiplicity of suits. Exclusive of the bonds heretofore canceled, the complainant's guaranty appears upon some six or seven hundred bonds, of $1,000 each. It would become liable to suits upon coupons upon each bond as it matures. It is obvious that in course of time these bonds might pass into the hands of hundreds of persons, and the complainant company thus be subjected to a ruinous number of actions. A judgment in its favor, as between it and a particular holder, would not conclude any other holder. If the defenses to these bonds be treated as purely legal, and the remedy sought a legal remedy, the jurisdiction would exist. "It is not essential that the remedy sought shall be purely an equitable remedy. The very fact that a multitude of suits are to be prevented constitutes the very inadequacy of legal methods and remedies, which calls the concurrent jurisdiction of a court of equity into being, under such circumstances, and allows it to adjudicate upon purely legal rights, and confer purely legal reliefs." 1 Pom. Eq. Jur. § 243.

There has been much conflict of authority as to the circumstances which will justify a court of equity in taking jurisdiction to prevent a multiplicity of suits; but an examination of numerous authorities brings me to the conclusion that where a complainant may be subjected to a multitude of separate suits by separate claimants, and the judgment in one case would not be conclusive in others, a case arises for equitable jurisdiction, if the defendants have a community of interest in the questions at issue, and in the kind of relief sought, by reason of the common origin of their several claims. This conclusion has the support of Mr. Pomeroy, who, after an elaborate consideration of this question, says:

"Under the greatest diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the denials of some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no common title, nor community of right, nor of interest in the subject-matter, but because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual

member of the numerous body. In a majority of the decided cases t⁹ ˅ com-. munity of interest in the questions at issue, in the nature and kind of relief sought, has originated from the fact that the separate claims of all the individuals composing the body arise by means of the same unauthorized, unlawful, and illegal act or proceeding. Even this external feature of unity, however, does not always exist, and is not deemed essential. Courts of the highest standing and equity have repeatedly appeared and exercised this jurisdiction where individual claims were not only legally separate, but were separate in term, and arose from an entirely separate and distinct transaction, simply because there was a community of interest among all the claims at issue, and in the remedy." Pom. Eq. Jur. §§ 222, 911, et seq.

The case of Railway Co. v. Schuyler, 17 N. Y. 592, is an interesting and instructive case. In that case it appeared that spurious certificates of stock in a railroad corporation had been issued by an officer having apparent authority to do so, and undistinguishable on their faces from certificates of genuine stock, and were outstanding in the hands of numerous holders. The holders of such spurious certificates were made parties defendant to the bill filed by the railroad company. After an elaborate consideration of the question, as to whether or not the bill would lie, that court maintained its jurisdiction, and held that the false certificates having a common origin and common ground of invalidity, though the holders became such under different circumstances and conveyances, and claimed different rights, yet they were all properly joined as defendants, and the bill maintained as a bill to prevent a multiplicity of suits.

In Supervisors v. Deyoe, we find a similar case. The treasurer of Saratoga county, under an authority to issue notes for money advances to the county to the amount of some $20,000, issued 73 notes to the amount of $138,000. These notes were held by 53 persons, many of whom had brought separate suits upon their notes. The supervisors filed a bill in equity against all the holders of said notes, including those who had brought suits at law. Upon demurrer to the bill it was held that upon the facts a case was made, entitling the plaintiff, upon equitable principles, to implead the holders of the notes, for the purpose of having their respective rights, and the liability of the company, determined in one action; that the claims were of the same general character; and that the action was maintainable for the purpose of preventing a multiplicity of suits, and to protect plaintiff against the hazard of a double recovery. 77 N. Y. 219.

The case of Waterworks v. Yeomans, L. R. 2 Ch. App. 11, was this: A very large number of persons held separate claims against the waterworks company. The claims were for damages originating in an inundation resulting from the breaking of a reservoir. Under a special act commissioners were appointed to inquire into and assess these damages, and issue certificates upon the several claims. The waterworks claimed that the power of the commissioners had expired, and that a large number of these certificates were in consequence invalid. A bill by the company, against a few, as representing the whole number, was filed, and a demurrer sustained. The court held that as the rights of all

depended upon the same question, and that although the defense could be made at law, it was "a very fit case, by analogy, at least, to a bill of peace, for a court of equity to interpose, and prevent the unnecessary expense and litigation which would be thus occasioned, and to decide once for all the validity or invalidity of the certificates upon which the claims of all persons depend." See, also, Black v. Shreeve, 7 N. J. Eq: 440.

The demurrer must be overruled.

One of the defendants has a suit pending in a state court against the complainant company upon matured coupons. The motion to discharge the injunction against the further prosecution of that suit is disallowed.