## *In re* NEW YORK AND PORTO RICO STEAMSHIP COMPANY, Petitioner.

### ORIGINAL.

No. 8. Original. Submitted December 17, 1894. — Decided January 7, 1895.

*In re Rice, Petitioner, ante,* 396, affirmed and applied, to the points: (1) That a party is entitled to a writ of prohibition as a matter of right where it appears that the court whose action is sought to be prohibited had clearly no jurisdiction of the cause originally, or of some collateral matter arising therein, and that he objected to the jurisdiction at the outset, and has no other remedy; (2) That where there is another remedy by appeal or otherwise, or where the question of the jurisdiction of the court is doubtful or depends on facts which are not made matter of record, or where the application is made by a stranger, the granting or refusal of the writ is discretionary; and it is not obligatory where the case has gone to sentence, and the want of jurisdiction does not appear on the face of the proceedings.

When a District Court has general jurisdiction in admiralty over the subject-matter and over the parties, it should be allowed to proceed to decision; and if it commits error in entertaining a claimant's contention against the charterers in the same suit with the libel against the ship, the error may be corrected on appeal.

THE American Sugar Refining Company and John B. Gossler filed their libel July 22, 1893, in the District Court of the United States for the Southern District of New York, against the British steamship Centurion to recover damages to a consignment of hogsheads of sugar imported from ports in Porto Rico to New York under certain bills of lading. The faults specified as the grounds of the claim were negligent and improper stowage; want of proper care on the part of the master, officers, and crew, or of the agent of the vessel and persons employed by him; failure to properly clean the hold and bilges for the cargo before loading it; omission to close the hatches between certain molasses, which was stowed in the between-deck, and sugar stowed in the lower hold; negligence on the part of the officers and crew to use the pumps on the voyage. And it was alleged that "a number of hogsheads of molasses having been broken and others having been shifted, either through stress of weather or improper stowage, their

contents ran down into the lower hold upon the sugar, partly
through the hatches and partly through the scuppers; that by
reason of such defective condition of the hatches, pumps, bilges,
sluiceways, decks, scuppers, and other equipment and appurte-
nances, and the failure and negligence of the officers and crew
or those in charge of her to properly pump the vessel, the
molasses and drainage from the sugar collected in the lower
hold, washing out part of the sugar from the hogsheads and
damaging the remainder."

On the twenty-eighth day of February, 1894, John Blumer
& Co., owners and claimants of the Centurion, filed their
petition, averring, among other things, that "the Centurion
at all the times mentioned in the said libel of the American
Sugar Refining Company and John B. Gossler was under a
time charter to the New York and Porto Rico Steamship
Company, a domestic corporation, by a charter of demise,
which provided, amongst other things, that all cargoes should
be loaded and stowed by the said charterers, and all work
and labor in and about the loading, stowage, and discharging
thereof was performed and paid for by the charterers and their
servants, the master and officers of said steamship under the
charter party having no duties to perform in connection with
the loading, stowage, and discharge of the cargo, their func-
tions being limited exclusively to the navigation of the vessel.
The cargo in question was loaded by the agents and servants
of the said charterers, the New York and Porto Rico Steam-
ship Company, in Porto Rico, under the supervision of their
purser and supercargo, who accompanied the vessel, and if
there was any negligence in and about the loading, stowage,
or care of the said cargo, as alleged in the said libel (which is
expressly denied), such improper stowage, negligence, and want
of care was on the part of the said servants of the time char-
terers and not on the part of the master, officers, and crew of
said steamship."   And petitioners prayed that process, accord-
ing to the course of cases in admiralty and maritime jurisdic-
tion, should issue against the New York and Porto Rico
Steamship Company, citing it to appear and answer the petition
and the libel, and that the court should pronounce against the

charterers instead of against the steamship, if the allegations of the libel should be proved and sustained; and for general relief.

Citation was ordered to issue and upon the return thereof the charterers appeared "specially for the purpose of objecting to the jurisdiction of this court," and moved to set aside the process on the grounds: "1. That this court has no jurisdiction in admiralty to entertain such petition.  2. That upon the face of said petition it does not set forth any case wherein process ought of right to issue against the said New York and Porto Rico Steamship Company."  The District Court denied the motion to set aside, the District Judge stating in a memorandum: "I cannot sustain either of the within objections, and no such inconveniences are made probable as should lead to the disallowance in this instance as a matter of discretion."  The New York and Porto Rico Steamship Company then applied to this court for an order to show cause why a writ of prohibition should not issue prohibiting the District Court from taking jurisdiction of the petition under which that company was brought into the suit of the libellants against the Centurion.  Leave having been granted to file the application, and a rule having been entered thereon, the District Judge made his return thereto, submitting:

"That the order and the citation to make the New York and Porto Rico Steamship Company a party defendant were issued because in the libel it was alleged that the damage to the sugars in question arose from different alleged acts of negligence, for some of which, if established, it appeared by the petition of the owners of the Centurion that the New York and Porto Rico Company would be primarily liable and bound to indemnify the shipowners, and for other of said acts of negligence, if proved, the ship would be primarily liable; and that the presence of the last-named company as a party to the suit was necessary to the due administration of justice in order to avoid a multiplicity of suits; to secure a complete hearing of the subject-matter through the presence of all the parties interested; to obtain an adjudication which should do justice to each and be binding upon all; to avoid conflicting decisions to which separate suits would be liable

through the different evidence likely to be produced in them when the parties were different, and thus to avoid any possible failure of justice through such causes, and any discredit to the administration thereof; and because the case, though not within the letter, was deemed to be within the spirit of the 59th Rule of the Supreme Court in admiralty, and because the order of this court to bring in the said company as a defendant at once instead of requiring the owners of the Centurion to wait until after a judgment against them before filing an independent libel against the said company in case negligent stowage was established, was, in the absence of any express rule on the subject by the Supreme Court, deemed to be within the limits of the authority of this court, as conferred by section 918 of the Revised Statutes, whereby this court is authorized 'to regulate its own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings,' and also as conferred by the 46th Rule of the Supreme Court in admiralty authorizing the District Court in cases 'not provided for by the previous rules' to regulate its practice 'in such manner as it shall deem most expedient for the due administration of justice in suits in admiralty.' Of these considerations a fuller statement has been given by this court in the cases of *The Hudson*, 15 Fed. Rep. 162, and *The Alert*, 40 Fed. Rep. 836, to which reference is hereby respectfully made.

" A further reason for the said order and citation was, that since the promulgation of the said 59th Rule, the constant resort to it in innumerable instances has been found in practice most useful in preventing abuses, and in general extremely satisfactory; and the occasional application of the rule to other cases of negligence or torts, closely analogous to those expressly covered by the 59th Rule, has proved equally conducive to the most speedy and satisfactory distribution of justice.

" The motion to set aside the citation was denied for the above reasons, and because in the present instance no inconvenience to the said New York and Porto Rico Company was shown or even averred to be likely to arise, such as

might lead the court in its discretion to withhold the relief asked for by the defendant shipowners.

"I further certify that the following additional pleadings have been filed in said cause, viz., the claimants' answer to the libel, and the libellants' answer to the petition, copies of which are hereto annexed; and that, on the argument of the motion to set aside the additional process, the substance of said claimants' answer was stated to the court, as the answer to be filed; and that the New York and Porto Rico Steamship Company has not answered, having been given by me until twenty days after the decision on this application for a writ of prohibition, in which to answer."

The answer of claimants thus referred to denied that the loss was ascribable to any act or omission for which the vessel or her owners were liable, but averred that it should be ascribed to perils of the sea; and in the alternative, "that if there was any neglect or default on the part of those engaged in or about the stowage, care or delivery of the cargo, as to which they had no knowledge, such neglect or default was on the part of the said charterers, their agents or servants, for which the claimants and the said steamship should not be held responsible." Claimants also set up in bar of the suit a decree in favor of libellants under a previous libel. 57 Fed. Rep. 412. That was a case arising on a different consignment of cargo stored in the same hold, on the same voyage, and the charterers, who were brought in as in this case, were held liable to pay the decree.

*Mr. George A. Black* for the petitioner.

*Mr. J. Parker Kirlin* opposing.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

In his return to the rule the learned District Judge, in elucidation of the grounds on which his order rested, refers to *The Hudson,* 15 Fed. Rep. 162, and *The Alert,* 40 Fed.

Rep. 836. In *The Hudson* it was held that where several vessels are alleged to be in fault in causing a collision by which the property of a third person is injured, in a libel by the latter to recover his damages, all the vessels should be proceeded against as defendants to avoid multiplicity of suits, and to enable the damages to be justly apportioned among those liable according to the law in admiralty; and that if in such suit the libellant proceeds against one vessel only, it is competent for the District Court to award its further process in the cause, upon the petition of the vessel sued, for the arrest of the other vessels to answer for their share of the damage. The question of the right to pursue this course was discussed at large by the learned judge and the conclusion reached that it was competent for the District Court in cases not provided for by the rules in admiralty of this court to regulate its own practice and to allow remedies according to the analogies of admiralty procedure as new exigencies arose, which the court might deem necessary for the due administration of justice; and that it was essential and expedient in collision cases in admiralty that the liability of all persons or vessels involved should be determined in a single action rather than in successive independent suits. The decision was announced February 7, 1883, and on March 26, 1883, Rule 59 in admiralty was promulgated by this court. 112 U. S. 743. This rule provided for procedure through which in a suit against one vessel for damage by collision process might be issued in the same suit against any other vessel charged with contributing to the same collision, or any other party, and for proceedings thereon.

In *The Alert* the District Court decided that in an action *in rem* against a chartered ship for damage to cargo, the charterers might, on the claimants' petition showing that the damage arose from the charterers' fault, be made parties defendant on the analogy of *The Hudson*, and of Rule 59. Afterwards, the court, having no doubt upon the evidence taken in the case that libellant was entitled to a decree against the Alert, while it did not clear up the dispute between the codefendants, held that the libellant might take

a decree against the Alert, and the case be retained for subsequent determination as between the defendants. 44 Fed. Rep. 685. The claimants thereupon appealed to the Circuit Court of Appeals for the Second Circuit, because the District Court had not decided the whole case and determined the rights of all the parties thereto, but the decree of the Circuit Court was affirmed. 61 Fed. Rep. 113.

The opinion of the District Judge on the motion to set aside the process against the charterers as unauthorized (40 Fed. Rep. 836) is an able and exhaustive discussion of the question involved.

The Alert was sued *in rem* for damage to cargo by the breaking of her tackle while discharging under a charter, and her owners in their answer averred that the tackle was furnished either by the shipper or by the charterers under a special agreement between them and not by the ship. The learned judge said : " The papers on which the present order against the charterers was issued show that the contract sued on was the charterers' contract. The libel is for damages upon the breach of this contract, through a negligent delivery of cargo. The charterers were in possession of the ship; they were the owners *pro hac vice ;* they were the principals in the contract. The bill of lading was their obligation, not that of the master, who protested against such cargo, and no fault appears in the ship or master. The owners of the ship, who have been obliged to interpose as claimants to prevent the sacrifice of their property, and the master, are under no personal responsibility. They are strangers to the contract sued on, and without any certain means of ascertaining the facts, or producing the evidence of them. Upon the case, as thus far presented, if the ship is liable, the charterers are also liable, and bound to indemnify the claimants. Yet the claimants, if defeated in this suit, when they sue the charterers for indemnity may be again defeated through the difference in the proofs; and the libellants, if defeated here, may again sue the charterers. If the charterers admitted their obligation to indemnify the claimants for the results of the present action, or if there were any express contract imposing this

obligation on them, the need of such an order as the present would be less, since notice to the charterers of the pendency of this action, and an opportunity to defend it, would bind them by the result, . . . though this would not prevent the injustice to the shipowners of being compelled to pay the damages on the charterers' contract before the latter were called on for payment.

"The charterers, however, do not admit their liability to indemnify the shipowners. There is no express contract covering the point. The obligation of the charterers to indemnify is directly involved in the question to be tried in this suit, viz., whether charterers agreed to supply the tackle, and depends on the same evidence. The charterers, if not made parties now, might litigate the same question anew in any subsequent suit. . . . Under the former practice in equity, the charterers would be brought in as defendants as a matter of course. Under the present practice in England, since 1873, the introduction of third persons in such cases is in the ordinary course of procedure, even in common law suits."

Many cases under the English Judicature Act were cited, and the practice in countries deriving their procedure from the civil law examined in the light of authority.

In the case at bar the bill of lading, under which the cargo described in the libel was transported, was the contract of the New York and Porto Rico Steamship Company and not the contract of the shipowners. It was issued in virtue of authority conferred by the charter party, and the charter party was alleged in the petition to be the basis of the claim made by the shipowners to receive indemnity for any sum they might be compelled to pay by reason of the charterers' negligence in and about the transportation of the cargo.

The District Court had jurisdiction over subject-matter and parties so far as the libel was concerned, and if, after decree thereon against the shipowners, the latter had brought suit against the charterers to recover from them, under the provisions of the charter party, the damages the shipowners had been compelled to pay, or if libellants had originally pro-

ceeded against the charterers *in personam* for breach of the implied or expressed obligations of the bill of lading, the District Court would have had jurisdiction.

In this instance, the District Court saw fit to adopt the practice, which would have obtained in equity, of bringing all the parties in and trying the whole matter at once, and we are asked to prohibit that court from so proceeding on the ground of want of jurisdiction thus to implead the charterers.

We have recently thus stated the principles applicable to the issue of the writ of prohibition, in *In re Rice, ante*, 396: "Where it appears that the court, whose action is sought to be prohibited, has clearly no jurisdiction of the cause originally, or of some collateral matter arising therein, a party who has objected to the jurisdiction at the outset and has no other remedy is entitled to a writ of prohibition as a matter of right. But where there is another legal remedy by appeal or otherwise, or where the question of the jurisdiction of the court is doubtful, or depends on facts which are not made matter of record, or where the application is made by a stranger, the granting or refusal of the writ is discretionary. Nor is the granting of the writ obligatory where the case has gone to sentence, and the want of jurisdiction does not appear upon the face of the proceedings. *Smith* v. *Whitney*, 116 U. S. 167, 173; *In re Cooper*, 143 U. S. 472, 495."

Without reviewing the action of the District Court on its merits, it certainly cannot be said that that court was clearly without jurisdiction, or that petitioners were without other remedy; for in the event of a decree against them, they could appeal directly to this court on the question of jurisdiction, or to the Circuit Court of Appeals upon the whole case, and that court might certify the question to this court for decision. *Ex parte Morrison*, 147 U. S. 114, 126; *United States* v. *Jahn*, 155 U. S. 109.

And the case is far from being one in which we should regard it as a proper exercise of discretion to interfere with the orderly progress of the suit below by the issue of this writ. The District Court, having general jurisdiction over the subject-matter and over the parties, should be allowed to

proceed to decision, and if error has been committed in entertaining the claimants' contention against the charterers in the same suit with the libel against the ship, it may be corrected on appeal. *In re Fassett, Petitioner,* 142 U. S. 479, 484; *Moran* v. *Sturges,* 154 U. S. 256; 286.

*Writ of prohibition denied.*