## MUNSON INLAND LINES, Inc., v. INSURANCE CO. OF NORTH AMERICA et al.

District Court, S. D. New York. August 26, 1929.

Rumsey & Morgan and Ralph W. Brown, all of New York City, for libelant.

Single & Single and L. R. Lecrow, all of New York City, for excepting respondents.

WOOLSEY, District Judge. My decision in this matter is that:

The first and second exceptions herein are sustained with leave to the libelant to amend its libel, and

The third and fourth exceptions are overruled.

270

This is a libel brought under two marine insurance policies by which the two respondents severally insured for the libelant the steel barge U. S. 208, of which the libelant was chartered owner.

The libelant alleges that on two different occasions, April 10 and April 14, 1928, the barge U. S. 208 suffered damage by collision in Buffalo Harbor, and therefore it claims two causes of action under each policy.

I. In setting forth its said collision losses, the libelant has pleaded the two accidents in one article, although they constitute two separate causes of action against each of the respondents.

A libel, which like this involves more than one cause of action, should plead each cause of action separately. This makes the libel easier to follow when read, and more convenient to plead to when it comes to be answered.

It would be inconvenient, if not difficult, to draw an answer to the present libel because it does not separate the causes of action, or propound each articulately as well as separately, in orderly fashion, as required by Admiralty Rule 22 of the United States Supreme Court (28 USCA § 723), which provides that: "The libel shall also propound and allege in distinct articles the various allegations of fact upon which the libelant relies in support of his suit, so that the defendant may be enabled to answer distinctly and separately the several matters contained in each article."

On this question of form, therefore, the first two exceptions to the libel are sustained, with leave to the libelant to file an amended libel.

II. On the question of joinder of the respondents involved in the third and fourth exceptions, however, the libelant is on firm ground.

Since the Act of Congress of August 23, 1842 (5 Stat. 516), the Supreme Court of the United States has been vested with power to make rules governing the practice of the District Courts in Admiralty. The result of the rules promulgated by the Supreme Court from time to time, of the ancillary rules put in force from time to time by the District Court, and of the decisions construing and developing both sets of rules, is a procedure which, while not yet perfected, is simple and on the whole satisfactory.

The reason for this fortunate result is that admiralty procedure has not been hampered by legislation, but has developed from precedent to precedent.

In The Alert (D. C.) 40 F. 836, Judge Addison Brown, of this district, whose decisions contributed much to this development, said, in 40 F. at page 838: "Both the statutes and the admiralty court rules, in cases not provided for, authorize the court 'to regulate its practice as is fit and necessary for the advancement of justice.' Rev. St. §§ 913, 918 [28 USCA §§ 723, 731], Rule 46; The Hudson [D. C.] 15 F. 175. This authority is a power held in trust for the benefit of litigants, and it is the duty of the court to exercise it in proper cases, by adapting its procedure to the practical needs of justice."

And see The Epsilon, 6 Ben. 378, 389, Fed. Cas. No. 4506.

This attitude of hospitality towards ordered procedural progress, expressed by Judge Brown, has been usual in our admiralty courts. It has been encouraged by the Supreme Court, and a wise procedural decision in a District Court has often been promptly followed by a Supreme Court rule, making the practice thus adopted universal for the admiralty courts of the United States.

Perhaps the most notable and useful characteristic of admiralty procedure, as it has thus developed, has been its tendency, in as many situations as possible, to devise a practice which will do away with multiplicity of suits.

An instance of this tendency, and of the influence of a wise decision on a procedural point, is the growth of the practice of impleading a third party by petition on the ground that he is liable to the petitioner primarily, or by way of indemnity, for the damages claimed in the libel.

Adopted, in order to avoid multiplicity of suits, by Judge Addison Brown in a collision case, The Hudson (D. C.) 15 F. 162, decided on February 7, 1883, this practice of impleading third parties in collision cases was almost at once approved by the Supreme Court, and crystallized by it in the Fifty-Ninth Admiralty Rule, promulgated March 26, 1883. 112 U. S. 743.

The third party practice, thus initiated, soon began to be used by the admiralty courts in cases not involving collision. The Alert (D. C.) 40 F. 836; The Centurion (D. C.) 57 F. 412. When the Supreme Court was asked to grant a writ of prohibition in the last-named case, it refused, In re New York & Porto Rico Steamship Co., 155 U. S. 523, 15 S. Ct. 183, 39 L. Ed. 246, and the practice of impleading third parties continued for about a quarter of a century sanctioned, except in collision cases, by decision only.

Eventually, when the Supreme Court promulgated the latest Admiralty Rules on December 6, 1920—to take effect March 7, 1921, 254 U. S. 707—this broadened third party practice was made a part of the basic code of admiralty procedure by the new Fifty-Sixth Rule (28 USCA § 723 and page 411) which replaced the former Fifty-Ninth Rule.

These rules and decisions as to third party practice have done much more than is often realized to prevent substantially the same issues of fact being tried more than once in our admiralty courts.

Another instance in which the admiralty courts avoid trying the same issue many times is to be found in the practice in proceedings for limitation of liability which brings into concourse all parties interested in a marine casualty.

It has always seemed to me that in a limitation proceeding the avoidance of multiplicity of suits is almost as important as the division of the limitation fund.

In this aspect, a limitation proceeding is comparable to the equitable remedy by way of a bill of peace, in which an equity court, founding its jurisdiction entirely on its desire to prevent multiplicity of suits involving a common question of law, arising under the same or similar facts, and thus to promote an efficient and economical administration of justice, takes jurisdiction of and tries issues which would ordinarily have been left to be tried by the common-law courts. Bailey v. Tillinghast (C. C. A.) 99 F. 801, 807; Mayor of York v. Pilkington, 1 Atk. 282; Lord Tenham v. Herbert, 2 Atk. 483; City of London v. Perkins, 3 Brown Parl. Cas. 602; New River Co. v. Graves, 2 Vern. 431; Louisville, N. A. & C. Ry. Co. v. Ohio Val. Imp. & C. Co. (C. C.) 57 F. 42; New York, etc., Railway Co. v. Schuyler, 17 N. Y. 592; Supervisors of Saratoga County v. Devoe, 77 N. Y. 219; Black v. Shreeve, 7 N. J. Eq. 440; Waterworks v. Yeomans, 2 Ch. App. 11; Lawrence on Equity Jurisprudence, vol. 2, § 1022.

It seems to me, therefore, that the avoidance of multiplicity of suits by every device, which is jurisdictionally possible and practically convenient, should be encouraged, and should be one of the main objectives of procedural administration, and of decisions by courts in practice cases.

In the present case we have identic policies, which arose out of a single binder, and under which the respondent companies insured the same vessel on the same valuation, although for different proportions.

The disasters, giving rise to the two claims against each company, necessarily involve the same issues with each company, and so involve the same defenses under each policy, although there is not any common interest between the respondents.

Under District Court Rule 15, the libelant undoubtedly had the right to join the respondents in one suit, because, as the rule provides, the two causes of action against each respondent involve substantially the same questions and arise out of the same transactions.

So, too, if, out of excessive caution, the libelant had filed two separate libels against the two respondents, the court under rule 16 could have entered an order consolidating the libels, could have compelled them to be tried together, and then could have entered such decree or decrees as might be indicated as appropriate by the evidence on the trial.

Substantially the same practice seems to be followed now in England. There it was held by the Court of Appeal in Payne v. British Time Recorder Co., Ltd., [1921] 2 K. B. 1, that under one of the High Court Orders (Order XVI r. 4), providing for the joinder of defendants, the plaintiff was entitled to join several defendants in respect of several and distinct causes of action, subject, of course, to the discretion of the court to strike out one or more of the defendants if it thought best.

After a discussion of the authorities, the general principle was thus stated by Lord Justice Scrutton [1921] 2 K. B. at page 16: "It is impossible to lay down any rule as to how the discretion of the Court ought to be exercised. Broadly speaking, where claims by or against different parties involve or may involve a common question of law or fact bearing sufficient importance in proportion to the rest of the action to render it desirable that the whole of the matters should be disposed of at the same time the Court will allow the joinder of plaintiffs, or defendants, subject to its discretion as to how the action should be tried."

Under the present practice in New York state, the joinder of parties defendant, as herein, would be sustained.

Sections 211 and 212 of the New York Civil Practice Act, read as follows:

"Sec. 211. All persons may be joined as defendants against whom the right to any relief is alleged to exist, whether jointly, severally or in the alternative; and judgment may be given against such one or more of the defendants as may be found to be liable, according to their respective liabilities."

"Sec. 212. It shall not be necessary that

each defendant shall be interested as to all the relief prayed for, or as to every cause of action included in any proceeding against him; but the court may make such order as may appear just to prevent any defendant from being embarrassed or put to expense by being required to attend any proceedings in which he may have no interest."

Under these sections of the Civil Practice Act two insurance companies who had insured the same goods against burglary were held to have been properly joined as defendants in the New York state court, in spite of the fact that the policies were separate, and that each of the defendants was liable only pro rata for the loss. Bossak v. National Surety Co. and Massachusetts Bonding & Insurance Company, 205 App. Div. 707, 200 N. Y. S. 148.

Apparently, therefore, the tendency to avoid multiplicity of actions, where it is possible to do so, is now strong in other jurisdictions. In view of the history, above outlined, of the development of admiralty practice in this respect, to hold that the respondents in this case cannot properly be joined in a suit in an admiralty court would be to betray enlightened procedure in the house of its oldest and stanchest friend.