THE DEBRIS CASE.

WOODRUFF *v.* NORTH BLOOMFIELD GRAVEL MINING Co. and others.

*(Circuit Court, D. California.* April 9, 1883.)

1. MULTIFARIOUSNESS—NUISANCE.

Several parties owning extensive mines at various points on the affluents of the Yuba river work them independently of each other by the hydraulic process, discharging their waste earth and other *debris* into the stream, whence it flows down into the main river, where the *debris* becomes mingled into one indistin-

guishable mass, passes on, and is deposited along the course of the river in the valley below, burying valuable lands and creating a public and private nuisance. A bill in equity by a party injured against all the parties thus contributing to the nuisance to enjoin it is not demurrable as being multifarious, or for a misjoinder of parties defendant.

2. SAME.

The parties thus creating the nuisance may be joined in equity, both on the ground that they co-operate in fact, and actually contribute to the nuisance, the injury being the single result of the action of the *debris* combined, and operating together long before it reaches the place where the injury is effected; also, on the ground of avoiding a multiplicity of suits.

3. NUISANCES—PARTIES—TENANT IN COMMON.

One tenant in common of land, injured by a public and private nuisance, may sue to enjoin the nuisance without making his co-tenant a party, either as complainant or defendant.

In Equity.

*George Cadwallader, I. S. Belcher,* and *J. Norton Pomeroy,* for complainants.

*W. T. Wallace, S. M. Wilson, J. K. Byrne,* and *W. C. Belcher,* for defendants.

SAWYER, J. This is a bill brought against a number of hydraulic mining companies, severally owning mines at various points on the Yuba river and its tributaries, and working them independently of each other, to restrain them from discharging the gravel, waste earth, and mining *debris* arising from working their several mines into the streams.

It is alleged, generally, that complainant has been for 24 years, and that he is now, the owner of an undivided half of three several parcels of land, situated on Feather river, and in the city of Marysville, on the Yuba river; that the defendants, severally, own large mines situated at various points on the Yuba river and its affluents, which they are, respectively, working by the hydraulic process, by means of which the gravel, waste earth, and other *debris* arising therefrom are discharged into the several streams on which the mines are situated; that vast quantities of this *debris* are carried by the rapid currents of the waters down the various streams into the Yuba river, where they commingle before reaching the valley, and after thus uniting flow along the main Yuba through the valley past Marysville into Feather river, thence to the Sacramento, making large deposits along the courses of these rivers, which have buried from two to fifty feet deep, and utterly destroyed, 40,000 acres of the most valuable lands, heretofore cultivated, and made it necessary to the citizens, including the complainant, to construct levees of great extent to pre-

vent the remaining lands, bordering on the streams mentioned, from being in like manner covered up and destroyed; that the deposits within the levees have already raised the level of the beds of the streams many—in some cases 50—feet; and that the constant raising of the level of the beds of the streams, and the lands already buried in the *debris*, renders it necessary to constantly increase the height of the levees at great expense to the people and the complainant; that the navigation of the Feather river has been greatly obstructed by these deposits, to the great inconvenience of commerce and navigation, and damage to the complainant and the public; that these deposits constitute a great public and private nuisance, which nuisance is rapidly increasing and becoming more intolerable; that these operations of defendants are still continued, and will be continued; and that the destruction of property of complainant and others will take place, and irreparable injury result, unless the defendants are restrained by injunction.

Defendants demur to the bill; and the two points relied on are misjoinder of defendants, and multifariousness in this: (1) That each defendant is pursuing its business, severally, without any connection with the other, and without any joint intent or joint action; that the cause of action is distinct and several, as against each, and neither the defendants nor the several causes of action can be joined in the same suit. (2) That the co-tenant of the complainant is a necessary, and indispensable, party to the suit; and that the suit cannot be maintained without making him a party either as plaintiff or defendant.

After a very careful examination and analysis of the numerous authorities cited on the first point, I am entirely satisfied that under the principles of equity jurisprudence, as established in England and the United States, adopting that system, there is no misjoinder of defendants; and that the bill is not multifarious in the particulars suggested. It is true that each defendant is, independently, working its own mines without any conspiracy or preconcert of understanding or action with the others; but they all pour their mining *debris* into the several streams, which they know must, by the force of the currents, be carried down into the main river, where they must commingle into one indistinguishable mass long before they reach the point where the nuisances complained of are committed and the damages are created. This commingling of the *debris* discharged into the various streams by the several defendants, and passing on to work the destruction alleged,—this aggregation of waste material, which, after aggregation, is precipitated upon the plains below, and creates

the nuisance,—is the necessary and natural consequence of the action of the several defendants; and they must, respectively, be presumed to know and to contemplate these natural and known physically-necessary results. The nuisance is created by the joint action of the *debris* from the various mines, which is combined, and afterwards flows on together long before it reaches the lands injured and threatened, and after such combination creates the nuisance complained of. There is, therefore, a co-operation in fact, if not in intent, of these several defendants in the production of the nuisance. The injury is the joint effect of acts originally several, but combined before the *debris* is precipitated upon the lands below and the injury is effected, and in contemplation of equity it constitutes a single cause of action. There is a common interest in the right claimed to discharge *debris* into the streams. The defendants each and all claim a common, though not a joint, right. The final injury is a single one,—a single result of the combined operation of this *debris*,—and all the defendants co-operate in fact in producing it. No damages are sought. Only equitable relief is demanded by restraining future action—a future contribution by each to the nuisance.

In *Thorpe* v. *Brumfitt*, L. R. 8 Ch. App. 656, a bill was supported against several parties acting individually and severally, in blocking up the passage to an inn by loading and unloading wagons in it, in the prosecution of their several callings. Lord Justice JAMES said:

"Then it was said that the plaintiff alleges an obstruction, caused by several persons acting independently of each other; and does not show what share each had in causing it. It is probably impossible for a person in the plaintiff's position to show this. Nor do I think it necessary that he should show it. The amount of obstruction caused by any one of them might not, if it stood alone, be sufficient to give any ground of complaint, though the amount caused by them all may be a serious injury. Suppose one person leaves a wheelbarrow standing on a way, that may cause no appreciable inconvenience, but if a hundred do so, that may cause a serious inconvenience, which a person entitled to use the way *has a right to prevent;* and it is no defense to any one person, among the hundred, to say that what he does causes no damage to the complainant."

A decree granting a perpetual injunction in the case was affirmed. In my judgment the present case is a much stronger one for sustaining the bill. The nuisance in that case was not so clearly a joint single effect of the acts of defendants co-operating together as that in this. In that case what each one did continued distinct and separate, and could be readily ascertained, though the share of the damages might be indefinite. In this the deposits are commingled and

indistinguishable, before the nuisance is committed, and the action effecting the nuisance is joint.

*Chipman* v. *Palmer*, 77 N. Y. 56, expressly recognizes the rule that "an equitable action will lie to restrain parties who *severally* contribute to a nuisance, while it holds that they cannot be joined in an action at law." So does *Crossley* v. *Lightowler*, L. R. 3 Eq. 279, and *Duke of Buccleugh* v. *Cowan*, 5 Ct. of Sess. Cas. (3d Series,) 214. See *White* v. *Jameson*, L. R. 18 Eq. 303. *Keyes* v. *Little York*, *G. W. & W. Co.* 53 Cal. 724, it must be admitted, decides the exact question now under consideration in favor of the defendants; and I cannot overlook that case. With all proper deference to the court rendering the decision, I am compelled to say that I think the importance of the distinction between proceedings at law and in equity with reference to the question involved, and the facility with which a court of equity can adjust its decrees so as to meet every requirement of justice, either did not attract due attention, or was not duly appreciated. There is a very great difference between seeking to recover damages at law for an injury already inflicted by several parties, acting independently of each other, and restraining parties from committing a nuisance, or from contributing to create, or increase a nuisance in the future. In equity the court is not tied down to one particular form of judgment. It can adapt its decrees to the circumstances in each case, and give the proper relief as against each party, without reference to the action of others, and without injury to either. Each is dealt with with respect only to his own acts, either as affected or unaffected by the acts of the others. It is not necessary, for the purpose of prevention of future injury, to ascertain what particular share of the damages each defendant has inflicted in the past, or is about to inflict in the future. It is enough to know that he has contributed, and is continuing to contribute, to a nuisance, without ascertaining to what extent, and to restrain him from contributing at all. But if otherwise, I do not perceive why the proportion of the injury inflicted by each may not be ascertained when practicable, and the decree adapted to give a proper remedy as to each. The greater elasticity in the forms and modes of proceedings in equity enables the court to so mold its decrees as to meet the special circumstances of each defendant, and thus do entire justice to many parties, under circumstances wherein a judgment at law would be wholly inadequate—circumstances which would render it impracticable to unite them in one action in that form of proceeding. And this is the foundation of the well-established

distinction between law and equity with reference to the joinder and non-joinder of parties in the same proceeding. The very object of establishing courts of equity was to furnish a tribunal adapted to do complete justice in complex cases, often involving many parties, in which the courts of law, by reason of their restricted powers resulting from their modes of proceeding, could not afford adequate relief. No inconvenience or additional costs can result to the several defendants in this suit from being joined with others, who also contribute to the same nuisance by originally independent action—action in its inception and first stages several, but ultimately, co-operating to produce the nuisance. On the contrary, it is convenient to dispose of it in one case, and the costs are diminished to each individual rather than increased by a single suit. The costs can be apportioned in equity, if proper, and the administration of justice is thus facilitated. In fact it is the only adequate mode of proceeding in cases like this. In my judgment, the decision in *Keyes' Case* is not in accordance with the principles of equity jurisprudence in England, or generally, in the United States, as established by the authorities. I also regard the case as substantially overruled by the present supreme court in the subsequent case of *Hillman v. Newington*, 57 Cal. 56. It is true the *Case of Keyes* was not mentioned by the court in its opinion in the latter case, but it was the principal case cited and relied on by counsel.

The *Case of Keyes* could not have been overlooked by the court, and there does not appear to have been any attempt to distinguish it, and it seems to me to be utterly inconsistent with the decision in *Hillman v. Newington*, and to have been in effect overruled by the latter case. The difference between these cases is only in circumstance, not in principle. The action in the latter case was for diversion of water by several defendants, each acting independently. It was both an action at law for damages, by a party entitled to a specific amount of water, and also a suit in equity to restrain the diversion complained of. The point most strongly pressed in the supreme court was the alleged misjoinder. The court says:

"Each of them (the defendants) diverts some of the water. And the aggregate reduces the volume below the amount to which the plaintiff is entitled, although the amount diverted by any one would not. It is quite evident, therefore, that without unity, or concert of action, no wrong could be committed; and we think that, in such a case, all who act must be held to act jointly. * * * It does not seem to us that the defendant's answer, that each one of them is acting independently of every other one, shows that the wrong complained of is not the result of their joint action; and if it does not, the answer in that respect is insufficient to constitute a defense."

The judgment at law was modified so as to *apportion the damages and costs equally among the defendants;* and affirmed as to the injunction. Even the action *at law was thus sustained.* If in that case "all who act must be held to act jointly," and "the wrong complained of is the result of their joint action," I cannot perceive why, for the purpose of equitable jurisdiction, the same consequences should not follow in the *Keyes Case* and in the case now under consideration. In this case the action of any one defendant, or any one of many other miners alone, might not, and probably would not, produce any appreciable effect at complainant's locality, or occasion the slightest nuisance or injury. In that case is it not "quite" as "evident, therefore, that, without unity or concert of action, no wrong could be committed?" and is it not equally a case, where "all who act must be held to act jointly?" If not, why not? It devolves upon those who maintain the contrary to clearly show why not.

So, *Blaisdell* v. *Stephens*, 14 Nev. 22, was a combined suit at law— to recover damages which had already resulted from a nuisance— and in equity to restrain its continuance. The two defendants, Sessions and Stephens, each separately and independently of the other, allowed water to run from his lands upon the lands of the plaintiffs, the combined action of which injured plaintiffs' ditch, which constituted the nuisance complained of. There was a *joint* judgment for the damages, and an injunction. On appeal, the supreme court held that, the act of each party being independent of the other, there was no joint liability at law, and reversed the judgment, and ordered a new trial. Upon a petition for rehearing, it was insisted that it was a proper case for equitable relief, even if the judgment at law could not be maintained. And upon a re-examination of the case, the court finally held, in accordance with the authorities, that there could be no joint recovery at law for the damages, but that it was a proper case for an injunction, and remanded the case, with directions that, if the damages should be remitted within 15 days, the decree for an injunction should stand. That case is exactly in point, also, and shows that this case is a proper one for an injunction, although there may not be a right to recover joint damages at law—that there is no misjoinder of parties, and no multifariousness in equity. That case also fully answers the question so confidently propounded by defendants' counsel, whether, had this case been brought in a state court, where law and equity are administered in the same case at law for damages, and in equity for an injunction, and been transferred to this court and divided into two

suits, according to its practice, this court would have dismissed the action at law for misjoinder of defendants, but have retained the equity branch, notwithstanding the objection on the ground of misjoinder and multifariousness? This is just what the supreme court of Nevada did, even without dividing the case into two suits. There are many other authorities, not necessary to mention, tending more or less strongly and directly to the same conclusion.

I also think this bill maintainable against all the defendants on the jurisdictional ground of avoiding a multiplicity of suits. There is a common interest,—a common though not joint right claimed; and the action on the part of all the defendants is the same in contributing to the common nuisance. The rights of all involve and depend upon identically the same questions, both of law and fact. It is one of the class of cases, like bills of peace and bills founded on analogous principles, where a single individual may bring a suit against numerous defendants, where there is no joint interest or title, but where the questions at issue and the evidence to establish the rights of the parties and the relief demanded are identical. Without analyzing and discussing the numerous cases upon the subject separately, this case appears to me to be clearly within the principle stated in and established by the following and many other authorities that might be cited. 1 Pom. Eq. §§ 256–269, and notes. In this, and the preceding sections, Professor Pomeroy clearly analyzes and satisfactorily classifies the cases on this subject. *Mayor of York* v. *Pilkington*, 1 Atk. 283–4; *Sheffield Water-works* v. *Yeomans*, L. R. 8 Ch. 8, 11; *Ware* v. *Horwood*, 14 Ves. 28–33; *Bd. of Sup'rs* v. *Deyoe*, 77 N. Y. 219; *Schuyler Fraud Cases*, 17 N. Y. 592; *Cent. P. R. Co.* v. *Dyer*, 1 Sawy. 650: *Gaines* v. *Chew*, 2 How. 642; and *Oliver* v. *Piatt*, 3 How. 412.

In *Gaines* v. *Chew* the supreme court of the United States says:

"It is well remarked by Lord COTTENHAM, in *Campbell* v. *Mackay*, 7 Sim. 564, and in 1 Mylne & Craig, 603, 'to lay down any rule, applicable universally, or to say what constitutes multifariousness, as an abstract proposition, is, upon the authorities, utterly impossible.' Every case *must be governed by its own circumstances;* and as these are as diversified as the names of the parties, *the court must exercise a sound discretion* on the subject. While parties should not be subject to expense and inconvenience in litigating matters in which they have no interest, *multiplicity of suits should be avoided by uniting in one bill all who have an interest in the principal matter in controversy, though the interest may have arisen under distinct contracts.*"

And this is substantially repeated in *Oliver* v. *Piatt*, 3 How. 412. Thus it is seen that there is no iron, inelastic rule on the subject of

multifariousness, but "every case must be governed by its own circumstances," and the court must exercise a *sound discretion on the subject.* Are not *all* these defendants "interested in the principal matter in controversy?" Nay, in the only matter in controversy? Are not the law and the facts and the evidence to establish the controlling facts, and the relief demanded against each, identical as to all? Then, why, under the injunction of the supreme court, should they not all be united in one bill for the purpose of avoiding a multiplicity of suits? In my judgment, if the bill does not present a case precisely like any other found in the books, it, nevertheless, presents one within the principles laid down, and one that a court of equity, in the exercise of a sound judicial discretion, is required to entertain—one that it cannot rightfully or properly refuse to entertain. It violates none of the limitations suggested in *Gaines* v. *Chew.* It will not subject the different parties to "expense or inconvenience in litigating matters in which they have no interest," but a "multiplicity of suits" is avoided by joining the several defendants, all of whom are interested in the only controversy in the action. The controlling facts are the same; the evidence to establish them is identical; the right claimed and the questions of law are one and the same; the same relief is asked against all; they all contribute to the same nuisance complained of; and there can be no more inconvenience and little more expense in determining all the rights of all the parties in one suit than would be required in each suit in determining them in several independent suits. The expense to each individual will be greatly diminished. While to require the complainant to pursue each defendant separately would be to put upon him a burden so impracticable and onerous as to amount to an absolute denial of justice. If each contributor to the nuisance must be sued separately, then there is no adequate remedy for such an injury. The locality of the nuisance is the common point, like the point of convergence in an hour-glass, upon which the previously aggregated results of the originally independent acts of the several defendants concentrate, and jointly operate, and from which the joint effects again radiate and distribute themselves upon all within the reach of their influence.

I can perceive no sound reason in the established principles of equity jurisprudence and practice why two or more of the parties injured by the common nuisance should not be permitted to unite, and two or more of those co-operating to commit it should not be joined in one suit to redress the injury and enjoin a continuance or in-

crease of the nuisance thus in common inflicted and in common sustained. To my mind this bill presents a much stronger case for joinder of all the defendants than *Gaines* v. *Chew, Oliver* v. *Piatt, Cent. P. R. Co.* v. *Dyer*, or, indeed, a large majority, if not all, of the cases to be found in the books establishing the rule invoked. As counsel for complainant well observed, if there is found in the books no precedent precisely like the case in hand, in all its circumstances, it must be because no case, except that of Keyes, exactly like it has been presented to the courts for adjudication, and the time and the occasion have now come to make one. I think the bill not demurrable on the ground of misjoinder of defendants or multifariousness.

I am satisfied also that the complainant is entitled to maintain the suit without joining his co-tenant or making him a defendant. His interest—his estate—is several. There is but a unity of possession. His interest or estate is capable of being injured, and he is entitled to have it protected from irreparable injury, whatever course his co-tenant may see fit to pursue. He claims nothing against his co-tenant. The co-tenant is not an indispensable party to a determination of his rights. In this state, both before the Code, under the common-law rules, and after the adoption of the Code, by express provision carrying the former rule into it, it was settled that tenants in common could sue alone. In *Goodenough* v. *Warren*, 5 Sawy. 497, a suit to quiet title, it was held that one tenant in common, made a defendant, could remove the case from a state court to the circuit court of the United States, on the ground that there was a controversy wholly between him and the plaintiff, which could be fully determined as between them without the presence of other parties. The same ruling was made in *Field* v. *Lownsdale*, 1 Deady, 289.

In *Dent* v. *Turpin*, 2 Johns. & H. 139, and in *Southern* v. *Reynolds*, 12 Law Rep. (L. T. R.) 75, it was held that a co-tenant, in the right to the use of a trade-mark, might maintain a bill to restrain its use without joining or making his co-tenant a party. In *Payne* v. *Hook*, 7 Wall. 431, it was held that one of the heirs of an estate could maintain a bill against an administrator and his sureties to obtain relief against fraudulent proceedings, for an account, and for her share of the estate, without making the other heirs parties to the bill. The other heirs were named in the bill, but it was not stated of what state they were citizens. The court says: "It can never be indispensable to make defendants of those against whom nothing is alleged, and from whom no relief is asked. A court of

equity adapts its decrees to the necessities of each case." Page 432. See, also, *Van Bokkelen* v. *Cook*, 5 Sawy. 593–4.

The present case is a stronger one for permitting the co-tenant to sue alone, as there is no account in which others are interested required. But this point is fully settled by the supreme court of the United States in *Mississippi & Missouri R. Co.* v. *Ward*, 2 Black, 485. The suit was brought by Ward, a tenant in common of three steamboats, to enjoin a nuisance, without making his co-owners parties complainant or defendants. Says the supreme court in deciding the case:

"Ward was the part owner of these steam-boats, and commander of one of them, navigating the river in successive trips between St. Louis and St. Paul, and which boats, the complainant alleges, were much injured and delayed by the bridge, which, he avers, is a great obstruction to navigation—amounting to a prominent nuisance. It is insisted *that Ward cannot sue alone, and could only come before the court jointly with the other part-owners of the vessels injured and delayed.* He seeks no damages by his bill, but only an abatement of the nuisance, as a preventive remedy against future injury and delay. A bill in equity to abate a public nuisance filed by one who has sustained damage has succeeded to the former mode in England of an information in chancery, prosecuted in behalf of the crown, to abate or enjoin the nuisance as a preventive remedy. The private party sues rather as a public prosecutor, though on his own account; and unless he shows that he has sustained, and is still sustaining, individual damage he cannot be heard. He seeks redress of a continuing trespass and wrong against himself, and acts in behalf of all others who are or may be injured; *nor is there more necessity for joining partners in the prosecution than there is for his joining in the suit any other person as complainant who has sustained injury.* Gibbons, Dilapidation, 402."

This decision exactly covers the point under consideration, and is authoritative. None of the points of the demurrer relied on are tenable. The demurrer to the bill must, therefore, be overruled, and it is so ordered, with leave to answer on or before the next rule-day of this court.