ORRIS U. KELLOGG, as Receiver of THE NATIONAL BROOME COUNTY BANK of Binghamton, and THE NATIONAL BROOME COUNTY BANK of Binghamton, Respondents, *v.* WILLIAM H. SIPLE, JENNIE O. SEARLES, as Executrix, etc., of JOSEPH E. SEARLES, Deceased, and CHENANGO VALLEY SAVINGS BANK, Appellants, Impleaded with Others.

*Bill of peace — requisites of — multiplicity of suits — multifariousness — misjoinder of causes of action.*

The Chenango Valley Savings Bank received deposits from some 146 persons, amounting in the aggregate to some $150,000, and issued to them, without authority, pass books bearing the name of, and reciting that the money had been deposited in the National Broome County Bank. Both banks became insolvent and the receiver of the Broome County Bank brought an action, alleging in the complaint the foregoing facts and further that the depositors, defendants therein, had made demand for their money and had brought or threatened to bring actions and were inspired to do so by the Chenango Savings Bank, also a party defendant; that the pass books were *prima facie* evidence of indebtedness, although issued without authority and not in fact valid claims, against the Broome County Bank; that the testimony of divers persons,

old and in feeble health, would be required, and that there was danger that it might be lost in the case of a number of separate suits being brought. To this complaint the defendants demurred.

*Held,* that the complaint stated a good case of action;

That the questions as to the authority of the Chenango Savings Bank to bind the Broome County Bank in the issue of a pass book in the name of the latter bank, was one of common interest to all the defendants and to the plaintiff;

That as the receiver represented to a certain extent all the creditors of the Broome County Bank, a case was presented where the court might properly interfere to restrain the separate prosecutions of the individual claims;

That the rule that equity would not interfere until there had been a trial at law, did not apply, for the reason that a judgment after a trial at law of one of the cases would not be binding in the other cases;

That the fact that there was likely to be a multiplicity of suits presented an occasion for the exercise of equitable jurisdiction;

That it was not a valid objection to the complaint that it did not state a case which would sustain an action against any one defendant alone, as equity might interfere where instruments were held by numerous parties which might give rise to a multiplicity of suits, although equitable relief against any single claimant might be denied;

That an allegation in the complaint that, in case the Broome County Bank was compelled to pay the claimants, then the savings bank should be required to account for the moneys it had received, was not a statement of a cause of action against the savings bank, but of what the plaintiffs would claim under certain conditions, and did not create a misjoinder of causes of action.

Where there is but one cause of action and no misjoinder of causes of action, the complaint is not multifarious.

APPEALS by the defendants, William H. Siple and others, from interlocutory judgments of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Broome on the 27th day of July, 1896, upon the decision of the court rendered after a trial at the Chemung Special Term overruling the defendants' demurrers to the plaintiffs' complaint.

*Frederick Collin, Carver, Deyo & Jenkins* and *F. F. Williams,* for the appellants.

*John Courtney, Jr.,* and *O. U. Kellogg,* for the respondents.

MERWIN, J.:

It is claimed on the part of the appellants that the complaint does not state facts sufficient to constitute a cause of action, and that causes of action are improperly united. On the part of the respondents, it is claimed that but one cause of action is stated, and that

the action is maintainable upon the principles applicable to a bill of peace for the prevention of a multiplicity of suits.

The allegations of the complaint are, in substance, as follows :

The National Broome County Bank, a national banking association duly organized under the laws of the United States, and located at Binghamton, N. Y., was engaged in the banking business at that place from at least March, 1882, to on or about January 25, 1895, when it closed its doors, being insolvent. On the 28th of January, 1895, the plaintiff Kellogg was duly appointed, by the Comptroller of the Currency of the United States, the receiver of said bank, and soon thereafter entered upon the discharge of his duties as such, and is now so engaged.

The defendant, The Chenango Valley Savings Bank, a savings bank duly incorporated under the laws of the State of New York, and located at Binghamton, N. Y., was, during the same period, doing business at that place as a savings bank, receiving money on deposit from various persons upon an agreement to repay the same with interest upon the presentation of a bank or pass book issued to the depositors respectively. Tracy R. Morgan was the treasurer of the savings bank and duly authorized to transact its business ; and he, together with a clerk or assistant employed by authority of the board of trustees, had the sole conduct and management of the business.

Between the 12th of March, 1882, and the 24th of January, 1895, the other defendants or their testator or intestate, deposited from time to time various sums of money with said savings bank at its office or banking house, the same being delivered to said Morgan or his said assistant, and amounting in the aggregate to upwards of $150,000. Upon the receipt of said moneys, the savings bank, its officers and employees, without the authority, knowledge or consent of the National Broome County Bank, issued and delivered to such depositors respectively, a bank book, known as a pass book, upon the National Broome County Bank, reciting that said moneys had been deposited with the National Broome County Bank, and containing upon the cover thereof the name of "National Broome County Bank, Binghamton N. Y.," and upon the inside of said cover the name of the depositor and the words "National Broome County Bank in account with."

A portion of these deposits was afterwards demanded by the defendants of and received from the savings bank, and there is now due to the defendants, as they claim, on account of the moneys so deposited, with the interest thereon, the sum of about $123,500.

On or about January 24, 1895, the savings bank discovered that it was insolvent. An examination of the affairs of the bank was made by the proper officer, and a notice was published requiring all depositors of the bank or all persons holding pass books against the bank to present the same at its office for inspection and verification. In pursuance of this notice, the defendants respectively presented to the officers in charge of the savings bank the pass books so issued to them as above stated, and were informed by such officers that the books and demands were not valid claims against the savings bank and would not be recognized as such by it, but were claims against the national bank, and they directed the defendants to present the same to the receiver thereof. Thereupon the defendants presented to the receiver said books as claims and demands against the national bank and demanded that the receiver allow the same. An examination of the books of the national bank revealed the fact that no part of the moneys entered on the said pass books had ever been received by or deposited with the national bank; and thereupon the receiver refused to allow the claims. Such claimants, defendants in this action, are in number 146.

The savings bank has requested and procured seven of the defendants to commence separate actions in the Supreme Court upon such pass books against the plaintiffs, to procure from the receiver the usual certificate of indebtedness, and is instigating the other defendants to also commence such actions, and they threaten to do so.

The defendants claim that the pass books are valid claims and obligations against the national bank, and were issued by the authority of that bank, and are in the nature of a written contract binding that bank for the payment of the sums of money therein entered. The said books upon their face are apparent claims and demands against the national bank, and are *prima facie* evidence of indebtedness against that bank. They were, in fact, issued without authority of that bank, and the statements in them that deposits were made in the national bank are not true, and they are not valid claims against that bank.

The savings bank has commenced an action against the plaintiffs to recover the moneys it has heretofore paid to defendants on said pass books, claiming that such payments were made on obligations against the national bank.

In order to ascertain the facts in reference to the pass books and the circumstances under which they were issued, the testimony of divers persons will be required, some of whom are advanced in years and in feeble health, and there is danger that the benefit of their testimony will be lost in case of separate trials on each claim.

The national bank never received any benefit, directly or indirectly, from any part of such deposits, except a small part thereof, if any, not exceeding in all the sum of $25,000, and such amount, if any there be, the plaintiffs are willing to allow, but they are unable to determine which deposits, if any, of the defendants' money came to its possession or went to its benefit.

If deposits were made by any of the defendants under such circumstances that the national bank is liable therefor, the moneys so deposited were received by the savings bank, and it should account therefor to the depositors or to the national bank.

Separate litigations will involve the trust represented by the receiver in expensive and vexatious litigations, and will consume a large portion of the trust funds in his hands, and will work great and irreparable injury to the creditors of the bank and the persons interested in such fund.

Relief is asked, among other things, that the prosecution of other suits be restrained; that the pass books be canceled and surrendered; that it be adjudged that the national bank is not liable therefor; that the rights and liabilities of the respective parties be finally determined.

According to the allegations of the complaint each of the numerous claimants, defendants, bases his claim upon a pass book issued by the savings bank in the name of the national bank. The authority of the savings bank to bind the national bank in the issue of such a token is a matter of common interest to all the defendants and to the plaintiffs. The determination of the question whether such authority existed is the object of the action. The plaintiffs allege that it did not exist, and, therefore, seek to restrain the prosecution of the suits against them. If, assuming the facts alleged in

the complaint to be true, the plaintiffs are entitled to an injunction, then a cause of action is stated.

The receiver has charge of a fund in trust, represents to a certain extent all the creditors of the national bank, and is in a position quite analogous to that of an officer of the court. If 146 persons, all having claims of a common origin that are all unfounded, are assailing the trust fund in the separate prosecution of such unfounded claims, it would seem that a court of equity would restrain them, unless there is want of right or power, or, as it is sometimes said, a want of jurisdiction in the court to entertain such an action.

In *Pfohl* v. *Simpson* (74 N. Y. 137) the doctrine is laid down that "in cases where many persons have claims, and are prosecuting, or are about to prosecute them at law, against one defendant or class of defendants, or a fund liable in equal degree to all those persons and to others, a court of equity, to forestall a multiplicity of actions, has jurisdiction of an action for a general accounting and adjustment of all the rights, and to restrain separate and individual actions at law in the same or other courts, thus bringing all the litigation into one suit."

In 2 Story's Equity Jurisprudence (§ 854) it is said in regard to bills of peace : "One class of cases to which this remedial process is properly applied is where there is one general right to be established against a great number of persons. And it may be resorted to either where one person claims or defends a right against many or where many claim or defend a right against one. In such cases courts of equity interpose in order to prevent multiplicity of suits, for, as each separate party may sue or may be sued in a separate action at law, and each suit would only decide the particular right in question between the plaintiff and defendant in that action, litigation might become interminable. Courts of equity, therefore, having a power to bring all the parties before them, will at once proceed to the ascertainment of the general right; and, if it be necessary, they will ascertain it by an action or issue at law and then make a decree finally binding upon all the parties."

In 1 Pomeroy's Equity Jurisprudence (§§ 255, 269, 274) it is considered that equitable jurisdiction is properly exercised where the individual claims were not only legally separate, but were separate in time, and each arose from an entirely separate and distinct trans-

action, simply because there was a community of interest among all the claimants in the question at issue and in the remedy, and many cases are referred to on the subject.

The claims here are all against one fund, and no claimant, by a separate action, can obtain a prior lien. They all arise from the acts of the savings bank and depend upon its authority to bind the national bank. The fact that each claimant may have had separate transactions with the savings bank at different dates does not destroy the community of interest so as to prevent the interposition of a court of equity. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 17 N. Y. 592; *Board of Supervisors* v. *Deyoe*, 77 id. 219; *N. P. Bank* v. *Goddard*, 131 id. 494.) In the case last cited (at p. 503) it is said: "A multiplicity of actions at law, involving conflicting claims to the same property, which a court of law could not solve without working injustice, founded upon one continuous and fraudulent scheme, inflicting a similar injury upon all, and different only in detail and degree, and where the legal remedy of fifty defenses to fifty replevin suits is shown to be destructive to the lien and right of the plaintiff, presents a state of facts which fully justifies the interference of equity." Here there was continuous conduct on the part of the savings bank inflicting similar injuries upon all. The same principle is illustrated by the practice in actions in the nature of creditors' bills, where different parties, having distinct rights that involve separate transactions at different dates, are made parties defendant and their rights determined. (*Proctor* v. *Sidney Sash & Furniture Co.*, 8 App. Div. 42, and cases cited.) In such cases, as in this, the evidence as to each transaction may be important in determining the main question of fraud in the one case and agency in the other. The fact that in the one class of cases a fraudulent intent may not in each individual instance be shown does not defeat the action as a whole. So here the possible fact that upon one or more occasions the national bank may have had the benefit of the transaction would not defeat the entire action. Such contingencies may be properly left for disposition at the trial. (*N. P. Bank* v. *Goddard, supra*, at p. 503.)

An application of the same principle in a different line is found in *Holmes* v. *Abbott* (53 Hun, 617). That was an action brought by the committee of the estate of an insolvent lunatic, and a com-

plaint was held good which sought to invalidate divers transactions and acts of the lunatic with different persons in regard to different portions of his real or personal property. The estate was said to be the subject of the action. The element of incompetency was common to all the transactions.

The rule that equity will not interfere until there has been a trial at law does not apply here, for the reason that a trial at law of one of the cases would not be binding in the other cases. The fact that there is or will be a multiplicity of suits indicates the inadequacy of legal methods and remedies, and presents the occasion for the exercise of equitable jurisdiction. (1 Pom. Eq. Juris. § 243.)

It is argued by the appellants that the complaint does not state a case which would sustain an action against any one defendant alone, and that, therefore, the action is not maintainable within the authority of *Town of Venice* v. *Woodruff* (62 N. Y. 462). That was an action for the cancellation of town bonds, and it is explained, sufficient for the purposes of this case, by Judge RAPALLO in *Town of Springport* v. *Teutonia Savings Bank* (75 N. Y. 397, 402), where, in speaking of the *Town of Venice* case, he says : "It was not intended to be denied that in the case of instruments creating a *prima facie* liability, and requiring an affirmative. defense, to be supported by extrinsic proof of facts, the circumstance that they were held by numerous parties who might bring numerous suits upon them in different places, might under some circumstances be regarded as a ground for equitable interposition, even though, if there were but a single claimant, equitable relief would be denied and the party left to his legal defense, nor that where a party was subjected to or threatened with numerous vexatious actions, equity might not under proper circumstances restrain them."

It is not in actions of this kind an indispensable element that the subject should be of an equitable character. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 17 N. Y. 608 ; *Board of Supervisors* v. *Deyo, supra*, 225.) If not, a defendant threatened with a multiplicity of suits at law, all depending upon a common question, would not be deprived of an equitable remedy because he could not maintain an affirmative action against any one alone. So that, in this case, even though the plaintiff could not maintain an action

against any one alone, that should not be said to deprive him of the remedy he now seeks.

It is easily inferable that there is practically no dispute as to the amount of the several claims of the defendants, but the question is which of the two banks is liable. It is plainly important that this question should be tried and decided in a manner that will bind all parties. Evidently the burden of the litigation is between the two banks. Until the failure of the banks, the claims were treated as being against the savings bank, but then a different position was taken at the instigation of the savings bank. The fact that the transactions extended over a long period of time does not necessarily prevent the interposition of a court of equity or unduly enlarge the burden of expense upon the claimants. It is alleged that nearly the same evidence would be involved in the trial of each separate action as in the trial of the present action. Besides, here the savings bank is back of the claimants and is a party to the action.

It is argued that causes of action are improperly united in the complaint. If, however, the action is properly brought as a bill of peace, then as to all the defendants who are holders of pass books there is but a single cause of action. It is not claimed that the savings bank is not properly made a defendant. It is, however, claimed that a cause of action is stated against it which cannot be properly joined with the action against the other defendants. This claim, as I assume, refers to the allegations in the complaint that, in case the national bank is compelled to pay the claimants, then the savings bank be required to account for the moneys it has received. This is not a statement of a cause of action against the savings bank, but of what the plaintiffs will claim in the contingency of their failure to establish in whole or in part their own cause of action. When that contingency happens, if it ever does, we must assume that the rights of all parties will be properly protected.

It is claimed that the complaint is multifarious. If, however, there is but one cause of action, and no misjoinder of causes of action, the defendants cannot here complain.

" It is impossible to lay down any general rule as to what constitutes multifariousness in a bill in equity. Every case must be governed by its own circumstances and the court must exercise a sound discretion." (*Gaines* v. *Chew*, 2 How. [U. S.] 619.)

A case of equity jurisdiction is, I think, presented by the complaint within the doctrine of the *Pfohl* case, and the demurrers thereto were properly overruled.

.PARKER, P. J., and HERRICK and PUTNAM, JJ., concurred.

LANDON, J. :

I concur. The facts set forth in the complaint show that each of the holders of the pass books has a cause of action against the savings bank, and that possibly some of them also have a cause of action against the plaintiff ; that they are conspiring with the savings bank to fix the entire liability upon the plaintiff ; that several of them have brought actions against the plaintiff, and the others threaten to bring actions ; that the plaintiff is not liable at all, except possibly to a few of the holders, and that such holders cannot be determined without making all of them parties ; that the bank or its officers are the authors of the confusion and wrong ; that the plaintiff is willing to respond for its liability so far as it exists.

Thus to determine the rights of the holders, to determine the plaintiff's real liability and to exonerate him from the alleged but unreal liability, and to avert the damage threatened by the actions already commenced and to be commenced, and to fix upon the savings bank, the author of the wrong and confusion, its real liability, both with respect to the plaintiff and the holders of the pass books, and thus to do complete justice to all the parties, it seems proper to bring them all before the court in one action, and I think the complaint appropriately framed for the purpose.

The interlocutory judgment should be affirmed, with costs, with leave to the appellants to answer within twenty days upon payment of the costs of the demurrers and of the appeals.

All concurred.

Interlocutory judgments affirmed, with costs, with leave to the appellants to answer within twenty days upon payment of the costs of the demurrers and of the appeals.