JOHN C. WARREN, Respondent, *v.* EDWARD S. PARKHURST and Others, Appellants.

*The discharging into a stream, by several riparian owners, of refuse, which is deposited on the land of a lower riparian owner — the latter may bring an action in equity against all of them for an injunction and damages.*

Where different riparian owners of distinct parcels of riparian land severally contribute, by the deposit of filth and refuse in a stream, to the depositing of foul and noxious substances upon the lands of a lower riparian owner, such lower riparian owner may maintain one action in equity against all of such upper riparian owners to enjoin them from continuing the trespass and to recover the damages for the injuries which he has already suffered.

The prayer for damages does not destroy the character of the action as one in equity. A court of equity, having obtained jurisdiction, may award damages and apportion them among the defendants according to the injury which each has inflicted.

PARKER, P. J., dissented.

APPEAL by the defendants, Edward S. Parkhurst and others, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Fulton on the 14th day of January, 1905, upon the decision of the court, rendered after a trial at the Montgomery Special Term, overruling the defendants' demurrer to the plaintiff's complaint.

*William A. McDonald* and *Baker, Burton & Baker*, for the appellants.

*Andrew J. Nellis* and *M. D. Murray*, for the respondent.

HOUGHTON, J. :

The plaintiff is the owner of a tract of land abutting upon an artificial canal existing for many years, through which runs a large portion of the waters of Cayadutta creek flowing through the cities of Gloversville and Johnstown, upon the banks of which are many factories, coloring and tanning mills, which deposit their refuse by sewers into the waters of the creek.

This court has decided that this plaintiff stands in the same position that he would if his lands adjoined the creek itself ( *Warren v. City of Gloversville*, 81 App. Div. 291), and in this decision his rights are treated as those of a riparian owner upon the creek.

This action is brought in equity against all the upper riparian owners who severally contribute by the deposit of filth and refuse into such stream to the creation of a nuisance by depositing foul and noxious substances upon plaintiff's lands, and an injunction is asked, jointly and severally, restraining the defendants from the continuance of such acts and for damages already suffered. The complaint further alleges that unless relief is granted restraining such trespasses the plaintiff will be compelled to bring numerous actions against the numerous defendants from time to time to recover damages accruing, and that his premises will be irreparably damaged.

The defendants demur upon the ground that the complaint does not state facts sufficient to constitute a cause of action against them collectively, in that it fails to state facts showing that there is either a unity of title, or of act, or community of interest, or legal concurrence between them in creating the alleged nuisance. And, further, that the complaint is bad for multifariousness, in that causes of action several in character have been united into a common one.

The demurrer was overruled by the trial court, and we think properly.

The single purpose of the action is to restrain all the defendants from pouring filth and refuse upon plaintiff's land. All the subjects and causes of complaint are harmonious with each other. It is true that one defendant may contribute more filth than another, but all are engaged in the one act which results in a nuisance upon plaintiff's land.

If the complaint alleged that the defendants claimed a common right of sewage into the stream, the case of *Meyer* v. *Phillips* (97 N. Y. 485) would be a direct authority against the contention of appellants. The absence of this allegation, however, is not fatal to the complaint. Although the alleged acts of the defendants be independent and several, the result of these several acts combines to produce whatever damage or injury the plaintiff suffers; and although decisions and statements of text writers may be found to the contrary, we think the weight of authority is that such a situation, in equity, constitutes but one cause of action. There is co-operation, in fact, in the production of the nuisance.

In *Strobel* v. *Kerr Salt Co.* (164 N. Y. 303) it was held that dif-

ferent riparian owners of distinct parcels of riparian land, who have a common grievance for an injury of the same kind, inflicted at the same time and by the same acts, though the injury differs in degree as to each owner, may unite in a common action to enjoin a higher riparian owner from diverting or polluting the stream, and this upon the theory that the common injury made a common interest and warranted a common remedy. The converse of this proposition must be true, and one lower riparian owner, if he chooses to do so rather than sue separately, must have the right to join in one action all the upper riparian owners who co-operate to produce the nuisance from which he suffers.

Pomeroy, in commenting upon the rule permitting distinct proprietors injured by one wrong to join in a suit against the single wrongdoer (which was the rule applied in *Strobel* v. *Kerr Salt Co.*, *supra*), says: " It cannot be pretended that there existed among the various owners with respect to each other, or as between their entire body and the defendant, any common bond or interest to which the term *privity* can be applied, or which bore the slightest resemblance to any species of privity. In fact, there did not exist among them as individual owners, or between them as a body and the defendant, any distinct legal relation whatever which the law recognizes. The only common bond among them as individuals, or between them as a body and the defendant, consisted in the fact that they each and all suffered the same kind of wrong to their separate properties, arising at the same time and from the same tortious act of the defendant, and in the fact that the legal causes of action and remedial rights of each and all were the same, depending upon similar matters of fact and the same rules of law." (1 Pom. Eq. Juris. § 257.) In a further comment by way of note to the above section it is said: " The only question * * * is whether there is a sufficient common bond among the body of similarly situated persons on the one side of the controversy to authorize the court to interfere and give *complete* relief to them *or against them all* in one proceeding, and thus avoid a multiplicity of suits."

" The Case of the Fisheries " (*Mayor of York* v. *Pilkington*, 1 Atk. 282) has been cited as illustrative of the rule from its decision to the present time. There one individual brought action

against five lords of manors who insisted upon their rights of fishery in the river Ouse. Demurrer was taken to the bill, and at first the lord chancellor thought the action would not lie because there was no privity, but only so many distinct trespasses by each defendant. On reconsideration the demurrer was overruled, and it was held that it was no objection that the defendants had separate defenses — the only question being whether the plaintiff had a general right to the sole fishery which extended to the defendants.

In the well-considered case of *Lockwood Company* v. *Lawrence* (77 Maine, 297), the plaintiff, a lower riparian owner, brought action against several upper riparian owners, independently operating large saw mills containing shingle and planing machines, from the operation of which sawdust, shingles and refuse wood were carried down the stream upon plaintiff's lands, raceways and wheels, creating a nuisance, concerning which an injunction was asked. Demurrer was interposed on account of misjoinder and multifariousness, and it was held not well taken because it was the combined action of the waste from the different mills uniting and mingling and thence drifting down upon the complainant, which created the nuisance and produced the injury complained of.

Other cases illustrating the rule are *Bradley* v. *Bradley* (165 N. Y. 183); *Wakeman* v. *Wilbur* (147 id. 657), and *Kellogg* v. *Siple* (11 App. Div. 458).

The appellants place great reliance upon *Keyes* v. *Little York Gold Washing & Water Company* (53 Cal. 724), where it was held that a complaint of the character of this one was bad.

The later case of *Hillman* v. *Newington* (57 Cal. 56), although not referring to the former decision, notwithstanding attention was called to it in one of the briefs of counsel, holds precisely the contrary doctrine and permits an injunction and recovery of damages to stand in an action by a lower riparian owner against upper riparian owners who, by their several acts, withheld from him the water to which he was entitled.

The doctrine of *Keyes* v. *Little York Gold Washing & Water Company (supra)* was also denied in *Woodruff* v. *North Bloomfield Gravel Mining Co.* (8 Saw. 628), as "not in accordance with the principles of equity jurisprudence in England or generally in the United States, as established by the authorities."

Of course, such an action could not be maintained at law; but the fact that damages are asked does not destroy its character as an equity action. The equity side of the court having obtained jurisdiction, can award damages and apportion them amongst defendants according to the injury which each has inflicted.

Our conclusion is that the demurrer was properly overruled, and that the interlocutory judgment must be affirmed, with costs, with the usual leave to answer upon payment of costs of the trial and of this appeal.

All concurred, except PARKER, P. J., dissenting.

Interlocutory judgment affirmed, with costs, with the usual leave to answer upon payment of the costs of the trial and of this appeal.