OPINION OF THE COURT
Peter J. Kelly, S.
Petitioner, the executor of the estate of Sylvester Cleary, *212 protests and seeks the vacatur of a notice of deficiency issued to him by the respondent, New York State Department of Taxation and Finance. The vehicle chosen to obtain such relief is a special proceeding pursuant to Tax Law § 998 that was commenced in the Surrogate’s Court. The dispute between the parties regarding the tax liabilities of the estate has its origins in the following factual scenario.
The decedent died on June 11, 2009 and letters testamentary were issued to the petitioner by decree of this court dated August 31, 2009. The total value of the probate assets set forth on the inventory of assets filed by the petitioner was $1,328,044.20. Among the assets set forth therein were a condominium, located in Westhampton Beach, New York, with a listed value of $600,000 and shares in a cooperative apartment, located in Forest Hills, New York, with a listed value of $350,000. Petitioner asserted both were subject to life estates which, at that time, had not been valued.
Pursuant to the will admitted to probate, the decedent had granted a life estate in both of the foregoing properties to Ann Elizabeth DePuy, a friend, on condition she pay all carrying charges on both premises. DePuy and decedent also allegedly executed an agreement, contemporaneously with the decedent’s execution of his will, wherein DePuy agreed to continue to care for the decedent, and the decedent stated he “desires . . . upon his death” that she have a life estate in the cooperative apartment. A signed copy of this agreement was not provided to the court and it is undisputed that the properties at issue remained in the name of the decedent until his death.
Petitioner claims an estimated estate tax payment of $40,000 was made “under protest” to the New York State Department of Taxation and Finance. Thereafter, the petitioner filed a New York State estate tax return, form ET-706, together with a federal form 706-NA and supporting documents, wherein a tax overpayment of $24,714.67 was claimed. In the estate return, the petitioner claimed that the values of the condominium and cooperative apartment owned by the decedent at the time of his death were subject to a discount based upon the decedent’s grant of a life estate to DePuy. Specifically, the petitioner claimed the value of the condominium to be $480,000 and the cooperative to be $280,000. A refund check in the amount claimed was subsequently issued to the petitioner.
However in March 2011, by way of a letter to petitioner’s counsel and a subsequent statement of proposed audit changes *213 addressed to the petitioner, the respondent adjusted the values for the aforementioned properties claimed in the estate tax return. Pursuant to the above notices, respondent rejected the discounts taken by petitioner and adjusted the value of the condominium and cooperative to $600,000 and $350,000, respectively. As a result, the estate was assessed a deficiency, inclusive of interest and penalties, in the amount of $38,997.18. The petitioner’s request for reconsideration at a conciliation conference held pursuant to Tax Law §§ 170 (3-a) and 998 (b) before the respondent’s Bureau of Conciliation and Mediation Services was denied in a subsequently issued conciliation order.
A proceeding under Tax Law § 998 is the exclusive judicial remedy available to a taxpayer who claims to have been aggrieved by a finding of the Commissioner of Taxation and Finance (Tax Law § 998 [h]). This is a special proceeding and its procedure is governed by article 4 of the Civil Practice Law and Rules (Tax Law § 998 [a]). The burden of proof in this proceeding is on the petitioner (Tax Law § 998 [g]) and the court may make a summary determination of the issues raised by the pleadings, affidavits and documentary evidence submitted if no issues of fact are raised (CPLR 409 [b]).
From the submissions it is clear that the facts are undisputed and only issues of law are raised for determination.
The petitioner asserts that, under definitions in the Internal Revenue Code and the Department of the Treasury Regulations, the proper valuation of the decedent’s condominium and cooperative must include, as a reduction, the life estate granted to DePuy by the decedent. Relying on Internal Revenue Code (26 USC) § 2031 and Treasury Regulations (26 CFR) § 20.2031-1, the petitioner argues that assessment of the “fair market value [of the disputed property]” includes the life estate because it is “the price which the property would change hands between a willing buyer and a willing seller,” “at the time of the decedent’s death.” More specifically, the petitioner claims that, as the property became encumbered by a life estate at the moment of the decedent’s passing, any willing buyer of the condominium and/or cooperative would take it subject to the life estate and, therefore, the property’s market value would be negatively affected.
While the petitioner correctly interprets how the Code and Regulations require an asset with a life estate to be valued, he clearly misinterprets when the mechanism laid out in the Internal Revenue Code and the Treasury Regulations regarding a life estate’s valuation must be applied.
*214 The petitioner proceeds under the misapprehension that since a decedent’s assets are valued “at the time of the decedent’s death,” the decedent’s testamentary scheme must be utilized at such time in valuing the asset.
However, pursuant to section 952 (a) of the Tax Law, the estate tax is imposed on “the transfer of the New York estate by every deceased individual” (emphasis added). Section 2001 of the Internal Revenue Code has near identical language and New York’s estate tax is generally conformed to the Internal Revenue Code (see Tax Law § 951 [a]). By definition then,
“[b]ecause the estate tax is a tax on the privilege of transferring property upon one’s death, the property to be valued for estate tax purposes is that which the decedent actually transfers at his death rather than the interest held by the decedent before death or that held by the legatee after death” (Propstra v United States, 680 F2d 1248, 1250 [9th Cir 1982]; see also Estate of Stewart v Commissioner of Internal Revenue, 617 F3d 148, 154 n 8 [2d Cir 2010] [“the estate tax is imposed on the fair market value of property, not on the value of the property to the person inheriting it”]).
In the words of the United States Supreme Court, “[w]hat this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death” (Young Men’s Christian Assn. of Columbus v Davis, 264 US 47, 50 [1924]). Contrary to the petitioner’s assertion, “[t]here is nothing in the statutes or in the case law that suggests that valuation of the gross estate should take into account that the assets will come to rest in several hands rather than one” (Ahmanson Found, v United States, 674 F2d 761, 768 [9th Cir 1981]).
In the present case, there is no proof that the decedent executed a deed before his death that granted a life estate in the disputed properties to DePuy. Rather, the decedent granted that life estate as part of the testamentary scheme he created in his will. Indeed, even the supposed contract the decedent executed with DePuy provides that “after his death” he wanted DePuy to have use and occupancy of the cooperative. Insofar as the condominium is concerned, it is not addressed by the agreement at all.
Accordingly, the decedent’s grant of a life estate does not affect the valuation of the disputed property since these assets must be assessed “as [they] exist[ed] in the hands of the estate” *215 and not as “fortuitously balkanized through a chain of post-death transactions” (Curry’s Estate v United States, 706 F2d 1424, 1427 [7th Cir 1983]). It is undisputed that at the time of decedent’s death an unencumbered condominium and unrestricted shares of stock of a cooperative apartment were assets owed by decedent. Thus, the life estate established by the decedent in his will is not taken into account in establishing the value of the decedent’s taxable estate. Moreover, the only proof in the record as to the value of those assets at that time is the value ascribed to them by the petitioner in the inventory of assets filed with the court in the probate proceeding, which is also the value utilized by the respondent in calculating the estate’s tax liability.
The petitioner’s additional argument that the respondent’s valuation must include the life estate since prior to the decedent’s death the disputed properties could not be sold without accounting for the rights of DePuy due to “their pre existing relationship” as de facto common-law spouses is without merit. New York does not recognize common-law marriages except under circumstances not present here (see e.g. Dee v Rakower, 112 AD3d 204 [2d Dept 2013]). At most their relationship established “a moral obligation [which] alone is not enough to set a court in motion to compel the devolution of property in a certain way” (Oursler v Armstrong, 10 NY2d 385, 391 [1961]).
And even if the court were to adopt the petitioner’s position that the decedent’s assets should be valued in the amount the devisee would realize, the petitioner neglects to consider that the life estate granted to DePuy has a market value. A life estate may be sold or conveyed either with the consent of the estate holder or, upon application to the surrogate, by the fiduciary (see Estate of Johnson v Commissioner of Internal Revenue, 77 TC 120, 124 n 3 [1981]; Matter of Stroke, 5 Misc 3d 1028[A], 2004 NY Slip Op 51592[U] [Sur Ct, Nassau County 2004]). Petitioner has not proffered any proof in the papers submitted regarding the market value of the life estate in its own right.
To the extent that the petitioner may rely on the alleged contract between decedent and DePuy as the foundation for a vesting of DePuy’s interest in the disputed properties before the decedent’s death, that claim also fails. As stated above, the alleged contract does not refer to the condominium at all. With regard to the cooperative apartment, although contracts to make testamentary bequests or devises are not against public policy *216 (see Hall v Gilman, 11 App Div 458 [1st Dept 1902]), such agreements must not only comply with basic contract principles and the statute of frauds (see EPTL 13-2.1), but such a contract “must further evince ‘a clear and unambiguous manifestation of the testator’s intention to renounce the future power of testamentary disposition’ ” (Aaron v Aaron, 64 AD3d 1103, 1104 [3d Dept 2009], quoting Matter of Lubins, 250 AD2d 850, 852 [2d Dept 1998]).
The evidence adduced here is insufficient to establish petitioner’s prima facie entitlement to relief on this ground as an executed and authenticated copy of the contract and proof that DePuy performed her part of same has not been submitted. Most importantly, the terms of the purported agreement do not indicate the decedent intended to relinquish his right to alter his testamentary scheme.
Petitioner’s request that the estate be permitted to elect a valuation date six months after the decedent’s death pursuant to Internal Revenue Code § 2032 can not be granted as it is plainly untimely (see Internal Revenue Code § 2032 [d] [1]). In addition, as there is no indication that the petitioner raised this issue before the respondent at the conciliation conference, it is not properly raised before this court.
Finally, the petitioner’s plea for this court to apply equitable principles under the circumstances also fails as an adequate remedy at law, specifically this proceeding, exists (see generally Lewis v City of Lockport, 276 NY 336 [1938]).
Consequently the petition to vacate the notice of deficiency is denied.